ROCK, Respondent v. ROCK, Appellant

(236 N.W.2d 191)

(File No. 11456. Opinion filed December 12, 1975)

Bormann & Buckmeier, Mobridge, for plaintiff and respondent.

William J. Srstka, Jr., Pierre, for defendant and appellant.

COLER, Justice.

Respondent was granted a decree of divorce on her complaint alleging extreme mental cruelty. She was given custody of the minor child of the parties, support for that child, all rights of the parties to certain real estate ordered sold to effect a property distribution and security for support payments and attorney's fees. Appellant, who answered and entered a separate counterclaim, appeals from not only the judgment but also from a separate order arising out of a show cause hearing at which he was held in contempt. We affirm.

Of the seven assignments of error briefed by appellant, all but two, namely, the reasonableness of the trial court's award to respondent of (1) property of the parties and (2) attorney's fees, were waived during oral argument by new counsel who had not been on the brief.

At the time of oral argument, it was represented that further proceedings were pending on matters within the continuing jurisdiction of the trial court seeking modification of portions of the judgment before a different judge. During oral argument appellant challenged the validity of a contempt order issued. We need not consider that issue inasmuch as appellant has returned the child and presumably has purged himself of contempt.

Respondent quite properly pointed out in her brief that the original assignments of error failed to refer to the page of the transcript or portion of the record where the alleged error appears. SDCL 15-29-6 and decisions annotated thereunder. This court, however, is at liberty to rule on the errors assigned where those errors are sufficiently argued and briefed. *Schumacher v. R-B Freight Lines Inc.*, 1950, 73 S.D. 535, 45 N.W.2d 458; *Larson v. Underwriters*, 1958, 77 S.D. 157, 87 N.W.2d 883.

While appellant, through his attorneys, made a special appearance to challenge the trial court's jurisdiction and, subsequently, filed his answer and separately a counterclaim for divorce, he never appeared before the trial court. At the time scheduled, even when rescheduled at appellant's request, he failed to attend a show cause hearing ordered by the court. He also failed to appear for adverse examination pursuant to either the stipulation entered or a subsequent order issued after he failed

to appear in accordance with his stipulation. At the time of trial, appellant had been adjudged in contempt and his whereabouts were not known. As a consequence, the evidence before the trial court was limited to what respondent presented and the cross-examination of her witnesses. However, the case was heard and no default entered as may have been ordered under SDCL 15-6-37(b).

The parties to this action were married on March 10, 1969, and one child, Gerald Alan Rock, was born of the marriage on March 9, 1970. At the time the decree of divorce was entered, respondent was approximately 32 years of age and appellant was approximately 42. Respondent was a high school graduate with some training and experience as a practical nurse and, at the time of the marriage, appellant was pursuing a course of study to become a medical doctor. Shortly after their marriage the parties established themselves in Bismarck, North Dakota, where appellant took his residency in radiology which he completed in January of 1973. Following his accreditation, the family established a residence in Mobridge, South Dakota, where appellant was soon associated with two hospitals in that area.

Though marital difficulty can seldom be traced to a single source, there appears, in this case, to be at the root of that discord an obsession on the part of appellant for frugality at the expense of others in the family though he indulged in few luxuries for himself. What appellant's income was at the time of the marriage through 1970 is not of record. During his residency in Bismarck, appellant was paid between $400 and $500 per month plus calls at the hospital so that his annual income in 1971 was slightly over $10,000. By 1972, his reportable net income for tax purposes reached $44,661. In 1973 he had a known gross income from his profession in excess of $70,000 for some ten months before he terminated his employment with hospitals at Mobridge and Hoven in the fall of 1973 and disappeared, taking with him the child contrary to the orders of the trial court previously entered. Appellant had also received nearly $20,000 in income from the ranch during 1973.

Respondent's earnings during the marriage came from employment as both a waitress and nurses aide. While appellant

was taking his residency, respondent's income amounted to $40 to $60 a week which was entirely devoted to living expenses of the family. At that time, appellant's contribution was limited to $20 per week for food. After respondent had discontinued employment, that weekly contribution of appellant continued until it was raised to $150 per month in January 1973 on repeated pleas of respondent. Appellant also contributed toilet articles from the hospital where he interned. Appellant furnished no transportation for his wife and child throughout their marriage. When respondent shopped, regardless of distance or weather conditions, she walked or rode a bicycle. Appellant refused to furnish their rented premises in either Bismarck or Mobridge. He did, however, acquire body-building equipment for himself which he used so religiously so as to require respondent and the children to absent themselves during his exercise. The only other luxury appellant allowed for himself was a hot bath after exercise and the water heater would then be turned off to conserve electricity.

The conservation of appellant's earnings, at the sacrifice of needs of both parties, did provide for funds necessary for initial payments totalling $50,300 over a seven-month period on a contract for deed for a ranch in Potter County, South Dakota, entered into on November 7, 1972, by both parties as joint tenants. This ranch, consisting of approximately 2,260 acres, was purchased at a price of $237,300 and at the time of this action that property constituted the principal asset of the parties. The property sold for $310,650 on March 22, 1974, pursuant to the trial court's judgment and the sale was confirmed by the court on that date. In addition thereto, the parties had acquired personal property including a pickup, an old car, a horse, a tractor and other miscellaneous machinery. There was alleged to be a Mexican investment of $25,000 of which respondent had minimal knowledge. In the brief and on oral argument, counsel claimed neither the existence nor the value of that investment had been established by respondent. We are not persuaded that, on the evidence before the trial court, the inclusion of this amount was clearly erroneous. SDCL 15-6-52(a).

Respondent, in the prayer for relief stated in the complaint, had sought both alimony and property division. The trial court, however, awarded respondent the lump sum of $64,985 and no

alimony. This amount which was approximately one-half of the value of the parties' acquired assets was ordered to be withheld from proceeds of the sale of the ranch which the court ordered to be sold to prevent rescission or foreclosure of the contract for deed under which certain payments had become delinquent. Appellant maintains this amount was excessive.

█ The discretion vested in the trial court to make an equitable division of the property under SDCL 25-4-44 is broad but not unbridled. The authority is proscribed by the language of the statute to consideration of "equity and the circumstances of the parties." Matters to be considered by the trial court for the purposes of this statute are set forth in *Caldwell v. Caldwell,* 1931, 58 S.D. 472, 237 N.W. 568; *Peterson v. Peterson,* 1946, 71 S.D. 314, 24 N.W.2d 35 and numerous other cases annotated under SDCL 25-4-44, making it unnecessary to restate them here.

█ As this court has stated, there is no "formula" which is binding on the trial court, *Kressly v. Kressly,* 1958, 77 S.D. 143, 87 N.W.2d 601. While several of our decisions have dealt with percentages of property awarded litigants in divorce actions which this court has determined to have been either properly or improperly allocated to a wife, it should be observed that there is no fixed percentage to which a husband is entitled:

> "There is no law that requires the court to give a husband one-half, or any other specific portion, of their joint accumulation. Each case should be governed by its own circumstances; and, where it appears that the wife is entitled to more than one-half, the court should give it to her." *Hurle v. Hurle,* 1920, 42 S.D. 558, 560, 176 N.W. 510, 511.

In reviewing the record presented on this appeal, we are not persuaded the trial court erred. The unreliability of appellant as a provider and the likelihood that respondent would recover no support from appellant for the child of the parties in the future, together with respondent's limited earning capacity established the need for a substantial share of the assets to maintain the child as well as respondent and justifies the award. We are not, therefore, at liberty to disturb the judgment. SDCL 15-6-52(a); *Estate of Hobelsberger,* 1970, 85 S.D. 282, 181 N.W.2d 455.

■ The court allowed respondent attorney's fees of $3,500 in addition to the sum of $200 previously paid plus sales tax of $140 and expenses of counsel in the amount of $454.43. Appellant, in claiming this amount to be excessive, has cited *De Witt v. De Witt,* 1971, 86 S.D. 59, 191 N.W.2d 177, wherein this court substantially reduced the award of attorney's fees. The clear language of the court in *De Witt v. De Witt,* supra, is:

"The allowance of attorney fees rests in the sound discretion of the trial court, *Baron v. Baron,* 71 S.D. 641, 28 N.W.2d 836, and will not be interfered with by this court unless it appears there is error in the exercise thereof. Each case must rest on its own facts, and there is little to be gained by comparing the present fee with others which have previously been allowed.

\*   \*   \*   \*   \*   \*

"In determining what constitutes a fair and reasonable counsel fee, the trial court should consider not only the amount or value of the property involved, but also the intricacy and importance of the litigation, the labor and time involved, the skill required to draw the pleadings and the trying of the cause, the discovery procedures utilized, whether there existed complicated legal problems, the time required to try the cause, and whether written briefs were required." 86 S.D. 59, 64, 65, 191 N.W.2d 177, 180.

The facts in this case are clearly distinguishable from the facts in *De Witt v. De Witt,* supra. In this case, it was not a matter of respondent unduly imposing upon her counsel's time amounting to some 130 hours. There were seven orders to show cause issued by the court on the application and affidavits of respondent which appellant ignored. There were four affidavits filed by respondent's attorney in which he set forth his frustrated attempts to take depositions of appellant and set a time for trial each of which were stalled by appellant's actions seeking delay and then not appearing on the date he selected. Appellant had, on various occasions, employed three different law firms in two different cities to represent him. Respondent employed one

attorney throughout the proceedings who was hard-pressed to serve all attorneys of record and unable, except on two occasions, to accomplish service upon appellant who ignored the court's orders and studiously avoided process servers. On the record, we are satisfied that the trial court did not abuse its discretion in the award made and the judgment.

All the Justices concur.