Naomi CURRIER, Plaintiff
and Appellant,

v.

Melvin F. CURRIER, Defendant
and Appellee.

No. 12688.

Supreme Court of South Dakota.

Considered on Briefs on Feb. 21, 1980.

Decided Sept. 17, 1980.

Keith R. Smit of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for plaintiff and appellant.

Joseph H. Neumayr, P.C., Gettysburg, for defendant and appellee.

WOLLMAN, Chief Justice.

Appellant, who was the plaintiff in the trial court, appeals from the provisions of a decree of divorce. We reverse and remand.

The parties were married in 1946. They adopted one child, who at the time of the divorce in 1978 had reached adulthood. Both parties were 54 years of age at the time of the divorce. The trial court entered judgment awarding a divorce to both parties.

The parties' assets consisted of 1480 acres of Sully County farm and ranch land, together with livestock and other personal property. The trial court found that the parties had a net worth of $313,000.

The divorce decree provided that appellant was to receive $3,000 cash within 30 days after the decree was final, alimony in the amount of $800 per month, and one quarter section of land, valued at $47,000, which appellee was to convey to appellant on January 1, 1983. After that date, appellant would be required to lease the quarter section to appellee for three years on a year–to–year prepaid cash–rent basis. Appellee was given the right to purchase the land on the basis of meeting any offers that appellant might receive from third parties. The decree also provided that the conveyance of the quarter section would constitute a material change of circumstances that would require a full review of the question of alimony, including whether any alimony should be continued after January 1, 1983. Finally, the decree provided that appellee was to provide adequate health insurance for appellant and that appellant should have the right to receive social security benefits based upon appellee's entitlement when appellant reached age 62.

During the course of the marriage appellant experienced mental illness, resulting in her hospitalization on several occasions.

Appellant's participation in the farming and ranching operation was typical of that of many housewives. She attended to the household duties and chores, helped to raise her son, and helped on occasion with the farm chores and field tasks.

In *Michael v. Michael*, 287 N.W.2d 98 (S.D.1980), we restated the principles governing our review of a trial court's division of property in a divorce case:

In reviewing defendant's contention that the trial court erred in making a division of the property, we start with the general proposition that under SDCL 25–4–44 the trial court has broad discretion in making a division of marital property. This court will not set aside or modify a trial court's decision in this regard unless it clearly appears that the trial court abused its discretion in entering its judgment. *Price v. Price*, 278 N.W.2d 455 (S.D.1979); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978). In making an equitable division of property, a trial court is not bound by any mathematical formula but is to make the award on the basis of the material factors in the case, having due regard for equity and the circumstances of the parties. These factors include the duration of the marriage, the value of the property of each of the parties, the ages of the parties, their health and competency to earn, and the contributions of each of the parties to the accumulation of the marital property. *Kressly v. Kressly*, 77 S.D. 143, 87 N.W.2d 601 (1958). See also *Hansen v. Hansen*, supra; *Lien v. Lien*, supra; *Vaughn v. Vaughn*, 252 N.W.2d 910 (S.D.1977); *Hanson v. Hanson*, 252 N.W.2d 907 (S.D. 1977).

287 N.W.2d at 99–100 (footnote omitted).

We have here a marriage of some 32 years' duration. Appellant has suffered from emotional problems during much of her married life. She is not equipped by her training, experience or emotional state to engage in any work that would result in more than minimal compensation. Her contribution to the acquisition of the marital property, although not as substantial as that of the parties in other cases we have had under review, was more than de minimis. As we held in *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978), the performance by a mother and housewife of the tasks of raising children, preparing meals, washing clothes, and performing related duties constitutes a valuable contribution to the accumulation of farm property. There is no doubt but that appellant's emotional problems substantially incapacitated her from performing these various duties at the level and with the consistency that might be expected of one not so afflicted, and there is no doubt that her periodic hospitalizations caused appellee to incur substantial expenses on appellant's behalf. Nonetheless, appellant is entitled to receive an award that more closely reflects her contributions to the accumulation of the property during the marriage and more closely approximates her needs.

We appreciate the trial court's apparent attempt to provide adequately for an individual who may very well be ill–equipped to manage large amounts of money or property and to preserve as a self–supporting unit appellee's remaining farm and ranch operation. This latter consideration, however, should not be paramount to an adequate, equitable division of the property. *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977).

Even when considered in the light of the award of alimony, the award of property to appellant is modest enough, but when viewed in the light of the trial court's announced intention to review and possibly terminate alimony payments after the conveyance of the land to appellant, the property award does not represent an equitable division. If the trial court desired to frame the decree in terms that would distribute appellant's share of the award in such a way as to insure that it would be safeguarded against appellant's possible ineptitude in managing it, then a mechanism other than that represented by an award of alimony, which at best lacks the permanency of an outright award of property and which in the instant case is almost foreordained to be reduced, should have been employed.

That portion of the judgment and decree of divorce which makes a division of the property and awards alimony is reversed, and the case is remanded to the circuit court for further proceedings. The trial court is directed to make an award to appel-

lant for attorney fees for prosecuting this appeal.*

DUNN, MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent.

The law is well settled in this state that the Supreme Court will not disturb an award of alimony or a division of property unless it clearly appears that the trial court abused its discretion in entering its judgment. *Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977); *Stenberg v. Stenberg*, 90 S.D. 229, 240 N.W.2d 100 (1976); *Rock v. Rock*, 89 S.D. 583, 236 N.W.2d 191 (1975). This general principle was reannounced in three different cases in this Court as recent as last year: *Price v. Price*, 278 N.W.2d 455 (S.D.1979); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978).

I am of the firm conviction that the trial court made a conscientious, studied and wise effort to reach an equitable property award and to provide adequate alimony for a mentally disturbed woman. Thus, I cannot bring myself to vote for a reversal of the trial court's decision based upon the premise that the trial court clearly abused its discretion.

The root of my dissent is that appellant cannot till, manage, or operate the farm. Appellee can. Thus, she should not be awarded a large acreage of the farm. Appellee can keep this farm together so that it will produce income for both of these litigants. The majority opinion, in effect, kills the goose that lays the golden egg. If the majority opinion would have the trial judge below reallocate and readjudicate the farm acreage, and assuming that I am correct that she cannot manage the land, what will become of the land? Will she sell it? If so, and the unit is dissected, then how will appellant make a living on the farm for either himself or this mentally disturbed

woman? An appreciable award of land unto appellant will rupture the only asset of the parties that produces income.

We are all entitled to be free from domestic violence. We are all entitled to domestic tranquility. Appellant, since 1961, created a domestic hell for appellee.

1. She contributed very little work, of any kind, in the past 15 years of married life.
2. She absented herself from home frequently and was often depressed.
3. She was a poor housekeeper.
4. She incurred huge medical bills.
5. She went out with other men.
6. She verbally attacked and abused the appellee.
7. She spent money erratically and beyond the means of the parties.
8. She slept in her own bedroom from 1973 until she finally left the farm.

Needless to say, appellant's contribution to acquiring and working this farm was minimal, if not tortious. Approximately 560 acres were acquired between 1948 and 1961; the bulk of the farm, 920 acres, was acquired in 1968 and 1970 when appellant's interest in the farm and her husband was virtually nil.

The trial judge observed these witnesses and heard their testimony. It was obvious to him that it would be far better for appellant to have a monthly income to care for her needs rather than land holdings to till, manage, or operate. He thus awarded appellant $800 alimony per month, a most generous award, and which appears to have been an effort on his part to be compassionate, considerate, and an effort to save the one real asset of the parties. Appellant was also awarded $3,000 cash to take care of her immediate needs. The farm, which she contributed little to, had virtually no interest in, and actively spurned, she now wants as it is settlement and litigation time. The parties agreed to a personal property settlement and the trial judge made an

---

* We have considered appellee's argument that the appeal should be dismissed because of certain procedural deficiencies and conclude that it is without merit.

award exactly per that agreement. It is the land award which is at issue. The court did not cut appellant out of the land altogether: it awarded her a quarter of land valued at $47,000. Appellee was given a three–year option to rent that quarter and the right to meet any offer made for its purchase. When one computes the alimony, it is readily apparent that appellee will have paid $28,800 in alimony in three years, from 1980, until January 1, 1983, when he must convey the property to appellant. The trial judge considered appellant's financial needs, knowing full well that he must provide for a mentally imbalanced individual. He wisely attempted to save the farm unit so that appellant could be provided for in the future. The majority opinion is attempting to finely tune the equities (as it visualizes equity) and in doing so has lost sight of appellant's behavior patterns, erratic spending propensities, and her total mental incapability to cope with life. It is obvious that appellant is unable to cope with the management or ownership of a large parcel of the farm when the record reflects that she has been committed to our state mental hospital on five different occasions. Appellant needs cash, not a plow. I distinguish the *Hanson* case cited by the majority as the wife in that case enjoyed good mental health and contributed greatly to the acquisition of the ranch.

There are two points made by the majority opinion which I feel compelled to specifically address. I agree that appellant's training, experience, and emotional state will not permit her to work in any vocation that will provide an adequate living. This is precisely why the trial judge saw fit to award appellant alimony so her daily needs would be met. The majority opinion holds that appellant should receive an award which more closely reflects her purported contributions and more closely approximates her needs. I must interpret this as land. Land will not approximate her needs. If the trial court now awards appellant a greater acreage, appellee and appellant are thrust into a hostile farm partnership, albeit a temporary one. The lower court wisely prevented such a partnership.

Rather than to reverse the trial court, I would affirm the alimony allowance, the award of the quarter section of land which is to be leased unto appellee, and all other aspects of the judgment with one exception: I would direct the trial court to modify its judgment by eliminating the reference that a conveyance of the quarter section would constitute a material change of circumstances requiring a full review of alimony with a possibility of total termination of alimony on January 1, 1983. A trial judge cannot make an anticipatory ruling– of any kind–and alimony is one subject in the law of domestic relations which can dramatically increase or decrease as the circumstances of the parties change. As applied to this case, when appellant is conveyed the quarter of land, the trial court surely may consider the income and health and financial circumstances of the parties, but it should not suggest a preordainment of a termination of alimony. This Court could properly affirm the trial court with a simple directive for a modification of the judgment. The division of property and the support awarded appellant is within the range of discretion that our state statutes and previous decisions allow the primary decision–maker. An outright reversal is unjustified. Appellee's cause of justice is reposed in the hands of this Court. His domestic burden in life with appellant has been heavy. It should end. But he should be financially required to care for her, mentally imbalanced as she is, with an income that he can rely upon from the farm. To destroy the farm is to destroy the income; to destroy the income is to destroy the alimony; to destroy the alimony is to destroy the cash flow that appellant needs.

The fountain–the wellspring–of long–range financial security so needed by this mentally disturbed woman will eventually cease to flow under the majority opinion.