2001 SD 13

**Rick BIEGLER, Plaintiff and Appellee,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant and Appellant.**

**No. 21286.**

Supreme Court of South Dakota.

Argued Sept. 20, 2000.

Decided Jan. 24, 2001.

JOHNS, Circuit Judge.

[¶ 1.] American Family Insurance Company (American Family) appeals from a money judgment awarding Rick Biegler (Biegler) damages for breach of an insurance contract, compensatory and punitive damages for deceit/bad faith breach of the insurance contract, and attorney fees per SDCL 58–12–3. We affirm but remand with instructions.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] In February 1996, S & R Food Mart (S & R), a convenience store, casino, and off-sale liquor store, located in Aberdeen, South Dakota, was owned by Sue and Rick Biegler and insured by American Family. On February 3, 1996, Mike Schwan (Schwan), a disabled individual, entered S & R where he was harassed by employees of the store. Among other things, Schwan was served coffee and soft drinks spiked with alcohol, had a flammable liquid squirted on the back of his pants, and then had his pants set on fire.

[¶ 3.] After Schwan left S & R he lost control of his vehicle and drove into a snowbank. The police were called and Schwan was arrested and incarcerated for driving under the influence. This charge was later dropped when it was discovered that Schwan became involuntarily intoxicated. Two of S & R's employees later plead guilty to various charges in connection with Schwan's harassment.

[¶ 4.] After the incident at S & R there was an outpouring of negative publicity surrounding Biegler and his store. On February 7, one of American Family's agents saw an article discussing the incident in an Aberdeen newspaper. The article was mailed to American Family's claims office and two days later American Family's adjuster, Mike Jares (Jares) met with Biegler. Jares interviewed Biegler for a brief period and then presented him with a non-waiver agreement. The agreement

Lee Schoenbeck and John W. Burke of Schoenbeck Law Office, Watertown, SD, Attorneys for plaintiff and appellee.

Chester A. Groseclose, Jr. of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, SD, Attorneys for defendant and appellant.

put forth the policy provisions that American Family felt would negate coverage for Biegler. Both parties signed the agreement.

[¶ 5.] Biegler felt that he needed the assistance of a lawyer and contacted H.I. King (King) of Aberdeen for advice. King then contacted one of Schwan's lawyers and made a settlement offer of $5,000. This offer was rejected and on February 23 King wrote to American Family and asked them to defend Biegler under the policy. American Family did not respond to King's letter; although it appears that Jares and King communicated by telephone or in person until early June.

[¶ 6.] On April 10, Schwan's attorney, Rick Sommers (Sommers) wrote King detailing his representation of Schwan and the fact that there may be a claim for negligent supervision and management. King forwarded a copy of the letter to American Family. On April 26, American Family's legal department was asked to review the letter. The legal department determined that there was no coverage for Biegler and a letter stating American Family's position was sent to King. The letter dated May 10, stated: "it continues to be American Family's position that coverage is excluded. We will be unable to provide any assistance for Mr. Biegler on this claim."

[¶ 7.] On May 31 King wrote to American Family asking it to "clearly state reasons for [its] refusal to assume the contractual obligations under the insurance policy...." On June 3 King wrote American Family, correcting an error in his May 31 letter, and asking American Family "to be more clear and state specifically on what paragraphs of the insurance contract American Family Insurance relies upon to avoid their contractual obligations." King also informed American Family to respond "as soon as possible, as the lawsuit is proceeding."

[¶ 8.] On June 5 Sommers sent King an offer to settle Schwan's case for $50,000. King forwarded this demand to American Family on June 11 and also advised Jares to put everything in writing from that date forward. By June 19 Vince Purtell (Purtell), an in-house attorney for American Family, concluded that American Family would have a duty to defend Biegler on the claim of negligent supervision, however he did not notify King of this. By June 19 Purtell had also concluded that the occurrence, liquor liability, and intentional tort exclusions did not defeat American Family's duty to defend Biegler. Around this same time Biegler, increasingly worried about a lawsuit, incorporated S & R to protect his assets.

[¶ 9.] On September 24 Sommers mailed King a summons, complaint, and three admissions of service. Sommers advised King to have his "clients execute the admissions of service within ten (10) days or we will have the sheriff serve them." The admissions of service were never signed, but Sommers and King had a conversation in which King said he would accept service. A date for admission of service was never discussed as the papers would be signed and returned to Sommers if settlement discussions failed. However, both attorneys believed a lawsuit had been started. The summons and complaint were mailed on September 30 to Richard Dale (Dale), American Family's in-house counsel, with a letter stating "they are now attempting to serve ... all the parties." On October 14 King mailed another copy of his September 30 letter to Dale. Dale never contacted any of the parties with regard to either of King's letters, as Dale did not believe that a suit had been started.

[¶ 10.] Schwan's complaint sued Biegler individually and in his capacity as owner of S & R for Biegler's own acts and the acts of those employed by him. The complaint sought recovery on the theories of negligent supervision of employees, assault and battery, false imprisonment, and intentional infliction of emotional distress.

[¶ 11.] King and Sommers were able to settle the case between October 27 and

October 29 and Schwan signed an agreement releasing all claims against Biegler and S & R. With the settlement complete, there was no reason to sign the admissions of service or file the complaint.

[¶ 12.] On November 7 Dale called Sommers to find out the status of the action, however, Sommers was unavailable and never returned Dale's call. Instead, Sommers called King, who communicated the next day that the case had been settled and that Dale should not do anything on the case now. King refused to inform Dale of the terms or amount of the settlement.

[¶ 13.] King wrote Dale a letter on November 15 expressing his displeasure with the way American Family had handled the claim. Dale did not respond and King resent the letter on December 3. On December 19 Dale wrote a letter explaining why there was no duty to defend on five of the six causes of action alleged in Schwan's complaint. Dale did admit American Family would be obligated to defend Biegler on the claim of false imprisonment. A copy was sent directly to Biegler and a courtesy copy was sent with a request for a copy of the release and other settlement documents to King. King responded by asking why American Family would now indicate they had a duty to defend after the case had been settled. There was some other brief correspondence between King and American Family in early 1997, ultimately; however, the action underlying this appeal was filed on July 7, 1997.

[¶ 14.] Biegler commenced action against American Family seeking compensatory and punitive damages resulting from a breach of the contract of insurance. American Family denied liability and filed motions for summary judgment. After several amendments of the complaint and several hearings, four causes of action were left for trial: 1) breach of contractual duty to defend; 2) breach of contractual duty to pay and thus, to indemnify; 3) bad faith; and 4) deceit. The jury, through a special interrogatory, decided that: 1) American Family breached its contractual duty to defend Biegler resulting in compensatory damages of $20,000; 2) American Family breached its contractual duty to indemnify Biegler resulting in compensatory damages of $25,000; 3) American Family made fraudulent misrepresentations to Biegler or his attorney, H.I. King, resulting in compensatory damages of $100,000; 4) American Family acted in bad faith when it breached its contractual duty to defend Biegler in the lawsuit commenced by Schwan (the jury, however, was not asked to award any compensatory damages for this); and 5) American Family should be required to pay $100,000 in exemplary damages as, and for, its bad faith breach of the insurance contract and/or fraudulent misrepresentations.

[¶ 15.] Biegler then applied for costs, prejudgment interest, and attorney's fees in the amount of $85,065 for vexatious refusal to defend. The trial court granted the applications for costs and prejudgment interest. The trial court awarded Biegler $40,000 in attorney's fees. These amounts were added to the above judgment resulting in an award of $296,034.46 for Biegler.

[¶ 16.] American Family filed a motion for a new trial challenging, in part, the sufficiency of the evidence to support the verdict. Biegler conceded that breach of contract damages should not exceed $25,000 and a remitter was granted in the amount of $20,000. This reduced the total award to $276,034.46. However, its motion for a new trial was denied and American Family filed this appeal raising the following issues:

Did the trial court err in denying American Family's motion for summary judgment and/or motion for new trial on Biegler's claim for breach of American Family's contractual duties to defend and to pay?

Did the trial court err in denying American Family's motion for summary judgment and/or motion for new trial on Biegler's claim for deceit?

Did the trial court err in denying American Family's motion for new trial on the jury's award of punitive damages for bad faith and/or fraudulent misrepresentation?

Did the trial court err in awarding attorney fees per SDCL 58–12–3 for American Family's vexatious refusal to defend?

## STANDARDS OF REVIEW

[¶ 17.] Our review of a trial court's order on summary judgment is well established.

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact . and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Read v. McKennan Hosp.*, 2000 SD 66, ¶ 8, 610 N.W.2d 782, 784 (citing *Coffee Cup Fuel Stops & Convenience Stores, Inc. v. Donnelly*, 1999 SD 46, ¶ 17, 592 N.W.2d 924, 926 (quoting *Walther v. KPKA Meadowlands Ltd. Partnership*, 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531)).[1] Our standard

of review on a motion for a new trial is also well established:

Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.

*Schuldies v. Millar*, 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (citation omitted).

## ANALYSIS AND DECISION

[¶ 18.] **Did the trial court err in denying American Family's motion for summary judgment and/or its motion for new trial on Biegler's claim for breach of American Family's contractual duties to defend and to pay?**

[¶ 19.] American Family contends the trial court erred by failing to grant its motions for summary judgment and/or new trial claiming that it has no duty to defend and/or to pay under the terms of its contract of insurance with Biegler. American Family's motion for new trial was premised on SDCL 15–6–59(a)(6) and SDCL 15–6–59(a)(7). American Family alleged both that the evidence was insufficient to establish any duties and that the court erred as a matter of law in allowing the coverage questions to be presented to the jury.

▬▬▬ [¶ 20.] The existence of the rights and obligations of parties to an insurance

1. Biegler argues that the denial of a motion for summary judgment is not reviewable on appeal after a full trial on the merits and the entry of judgment thereon. This same issue was just addressed in *Carpenter v. City of Belle Fourche*, 609 N.W.2d 751, 2000 SD 55, n.3, 609 N.W.2d 751, 757, where we reiterated that the denial of a motion for summary judgment is properly reviewable following trial per SDCL 15–26A–7 (our statute which pro-

vides for those orders and determinations subject to review on appeal following a judgment.) We, therefore, conclude that we may hear American Family's arguments concerning the propriety of the trial court's rulings but we address them along with our discussion concerning the propriety of the trial court's denial of the motions for new trial since the same analysis applies to each.

contact are determined by the language of the contract, which must be construed according to the plain meaning of its terms. *Western Cas. & Sur. Co. v. Waisanen,* 653 F.Supp. 825, 827 (D.S.D.1987) (applying South Dakota law on a duty to defend issue); *Alverson v. Northwestern Nat. Cas. Co.,* 1997 SD 9, ¶ 8, 559 N.W.2d 234, 236 (S.D.1997). Therefore, we must review the instant policy in light of Schwan's complaint to determine if American Family had a duty to defend and a duty to pay.

An insurer's duty to defend and its duty to pay on a claim are severable and independent duties. *Hawkeye–Security Ins. Co. v. Clifford,* 366 N.W.2d 489, 490 (S.D.1985). 'The duty to defend is much broader than the duty to pay a judgment rendered against the insured .' *Id.* The insurer bears the burden of showing that it had no duty to defend its insured. *North Star Mut. Ins. Co. v. Kneen,* 484 N.W.2d 908, 912 (S.D.1992). To satisfy this burden, 'the insurer must show that the claim *clearly* falls outside of the policy coverage.' *Id.* (citing *City of Fort Pierre v. United Fire and Cas. Co.* 463 N.W.2d 845, 847 (S.D.1990); *Bayer v. Employers Reinsurance Corp.,* 383 N.W.2d 858, 861 (S.D.1986); *Hawkeye–Security,* 366 N.W.2d at 492.) 'If, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured.' *City of Fort Pierre,* 463 N.W.2d at 847 (citing *Hawkeye–Security,* 366 N.W.2d at 492).

*State Farm Mut. Auto. Ins. Co. v. Wertz,* 540 N.W.2d 636, 638 (S.D.1995); *South Dakota State Cement Comm'n v. Wausau Underwriters Ins. Co.,* 2000 SD 116, 616 N.W.2d 397. If just one claim falls within the policy coverage, the insurer must defend "even though the pleadings are ambiguous or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless or even fraudulent." *Hawkeye–Security,* 366 N.W.2d at 491–92.

[¶ 21.] Rick and Susan Biegler had a Businessowner Package Policy with American Family Mutual Insurance Company. Section I of the policy covers replacement of property used in the business, including money or securities. Section II covers business liability and medical payments. Coverage A of Section II is for bodily injury and property damage liability. Coverage B of Section II is for personal injury and advertising injury liability. And Coverage C of Section II is for medical payments.

[¶ 22.] The policy contains definitions of terms used in Section II. At subsection 5, bodily injury is defined as "bodily harm, sickness, or disease sustained by a person including death resulting any of these at any time." At subsection 13, personal injury is defined to mean "injury other than bodily injury arising out of one or more of the following offenses: a.) false arrest, detention or imprisonment. . . ."

[¶ 23.] American Family argues that it had no duty to pay since various exclusions apply to preclude any liability it may have under the bodily injury insuring agreement of Coverage A. It is not necessary to analyze whether any of these exclusions under Coverage A apply since Schwan's complaint alleged a cause of action for false imprisonment, which is a personal injury under Coverage B. Under Coverage B, American Family has agreed that it:

> Will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies. The personal injury or advertising injury must be caused by an offense committed during the policy period and in the coverage territory. We have the right and *duty to defend any suit seeking those damages.*

(emphasis added).

[¶ 24.] Clearly American Family had, under Coverage B of Section II, a duty to defend any suit brought against its insured

for damages claimed to arise from a false imprisonment and also a duty to pay any resulting judgment based on false imprisonment. Since Schwan sued for damages arising from a false imprisonment, American Family had a duty to defend the suit against Biegler and to also pay any judgment arising from the claim of false imprisonment.

▪ ·[¶ 25.] American Family contends, however, that even if it has a duty to defend a false imprisonment claim or a negligent supervision of employees claim, its duty in this case was never triggered because Biegler failed to provide it with proof of service of the summons and complaint sent to King by Sommers. American Family contends that without actual service of process or acceptance of the same by Biegler, there was never a suit to defend. The term suit is defined in the definitions portion of the policy as "a civil proceeding in which damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies are alleged." This definition does not tell us what Biegler's obligations are concerning the tender of claims brought against him for false imprisonment and negligent supervision. It certainly does not tell us that Biegler had the obligation to accept service of process and provide proof of the same prior to American Family being obligated to defend. Biegler's obligations are set forth in that portion of the policy entitled "WHAT TO DO IF YOU HAVE A LOSS." There it provides in 2.d.:

> If there is an occurrence or offense that may be covered under Section II which may lead to a claim or suit being made against you, you must:
>
>> d. If you or any insured are sued, or someone files a claim or suit against you, send us the legal documents right away. These documents would include demands, notices, summonses or other process received by you or your representative.

[¶ 26.] Biegler did what was required of him once he received notice that Schwan was suing him. He sent all legal papers to American Family and asked American Family to defend him. His formal offer of the defense to American Family is sufficient; especially when American Family never notified him that there were any further steps to be taken before it would assume the defense of the claim.

▪ [¶ 27.] American Family also contends that since Biegler incorporated S & R and it was S & R's check which paid the $25,000 to Schwan, Biegler is not the real party in interest and, therefore, lacks standing to seek recovery of the settlement money paid to Schwan. The real party in interest rule is satisfied "if the one who brings the suit has a real, actual, material, or substantial interest in the subject matter of the action." *Vander Vorste v. Northwestern Nat'l Bank*, 81 S.D. 566, 572, 138 N.W.2d 411, 414 (1965). "The purpose of the real party in interest provision is to assure that a defendant is required only to defend an action brought by a proper party plaintiff and that such an action must be defended only once." 59 Am.Jur.2d *Parties* § 35 (1987); *see also Wang v. Wang,* 393 N.W.2d 771 (S.D.1986).

▪ [¶ 28.] S & R has no contractual relationship with American Family and there is no evidence that Biegler ever assigned any claim he had against American Family to S & R. Thus, contrary to American Family's arguments, Biegler is the proper party in interest to seek damages against it and S & R has no basis upon which it can seek damages against American Family for breach of American Family's duty to pay.

[¶ 29.] **Did the trial court err in denying American Family's motions for summary judgment and/or new trial on Biegler's claim for deceit?**

[¶ 30.] American Family contends the trial court erred when it denied its motion for a new trial under SDCL 15-6-59(a)(6) on the jury's compensatory damages

award of $100,000 for deceit. It claims that the evidence was insufficient to support a finding of deceit, and in the alternative, insufficient to support a jury award of $100,000 in compensatory damages. American Family also contends that the trial court erred when it denied American Family's motion for summary judgment made on the ground that there was no evidence of deceit.

[¶ 31.] Was the evidence sufficient to support a finding of deceit? The tort action of deceit is recognized in SDCL ch. 20–10. SDCL 20–10–1 provides: "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20–10–2 sets forth the methods by which deceit may be practiced. It provides:

A deceit within the meaning of § 20–10–1 is either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing.

SDCL 20–10–2.[2]

[¶ 32.] American Family contends that the evidence is insufficient to justify a finding of deceit. In *Morrison v. Mineral Palace Ltd. Partnership*, 1999 SD 145, 603 N.W.2d 193 (*Morrison II* ), we discussed at length the extent of a trial court's review when faced with a motion for new trial based on the argument that the evidence is insufficient to support the verdict.

> It is a well-established rule in South Dakota that a trial court has broad discretion to grant a new trial on the ground of insufficient evidence. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D. 1980). Nevertheless, a jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law . . . .' *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983). A verdict should only be set aside if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply 'the reasoning faculty on the facts before them.' *Lewis*, 290 N.W.2d at 497.

*Gilkyson [v. Wheelchair Express, Inc.]*, 1998 SD 45, ¶ 16, 579 N.W.2d [1], at 5 (quoting *LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22, ¶ 13, 544 N.W.2d 523, 526–27). Furthermore, while this Court rec-

2. We note that the jury was instructed as to actual and constructive fraud. Since Biegler's theory of recovery was grounded on the tort of deceit, an instruction on constructive fraud was improper.

> An instruction on constructive fraud, as defined in SDCL 53–4–6, should not be given in a tort action for deceit brought under SDCL ch. 20–10. SDCL ch. 53–4 makes contracts obtained by duress, fraud, undue influence, or mistake voidable. SDCL 53–4–5 defines actual fraud which makes a contract voidable; SDCL 53–4–6 defines constructive fraud which makes a contract voidable. The tort action of deceit is based only upon actual fraud as defined by SDCL 20–10–2, and requires scienter or its equivalent. Constructive fraud, which requires

no fraudulent intent, is not a basis for deceit under SDCL ch. 20–10, nor under common law. 37 CJS *Fraud* §§ 2,4; 37 Am. Jur.2d, *Fraud and Deceit*, §§ 185, 188, 197, 220. Although actual fraud may be the basis of tort actions and contract actions, constructive fraud is the basis only for actions for the avoidance of contracts. 37 CJS *Fraud* §§ 2,4; 37 Am.Jur.2d, *Fraud and Deceit*, § 220; 17 CJS *Contracts* §§ 149, 152, 154(c), 160.

> *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 116–17 (S.D.1977). Although American Family has not appealed the giving of this instruction, we must reiterate the important distinctions between constructive and actual fraud and deceit.

ognizes the trial court must exercise discretion when presented with a motion for a new trial, we do not mean to imply a court has carte blanche discretion to differ with the actions of the jury. *Bakker [v. Irvine]*, 519 N.W.2d 41, at 49 [(S.D.1994)]. [N]either the trial court nor this court may set aside a verdict unless it is clearly unreasonable, arbitrary and unsupported by the evidence. *Id.* (quoting *Kusser v. Feller*, 453 N.W.2d 619, 621 (S.D.1990) (internal quotations omitted) (citation omitted)). In *Bakker* we said:

'In considering the verdict of a jury in any particular case, to determine whether or not it is sustained by the evidence, we are not to speculate or query how we would have viewed the evidence and testimony, or what verdict we would have rendered had we been the jury. The real and only question to be solved and answered is, *Is there any legal evidence upon which the verdict can properly be based, and the conclusions embraced in and covered by it be fairly reached?* It is the province of the jury to weigh and pass upon the evidence; to reconcile conflicting testimony; to determine the truth or value of evidence; to ascertain and declare, from all the evidence and testimony, the facts of the case; and from the facts, when ascertained by them, and the law as given to them by the court, to arrive at and announce their decision, which is their verdict.'

*Bakker*, 519 N.W.2d at 49 (quoting *Drew v. Lawrence*, 37 S.D. 620, 624, 159 N.W. 274, 275 (other citations omitted)).

*Id.* at ¶ 10, 603 N.W.2d at 196.

[¶ 33.] Based on our review of the record we are satisfied there were genuine issues of material fact addressed to the attention of the court at the time of the hearing on the motion for summary judgment and that, further, the verdict of the jury is reasonable in light of the evidence presented. Thus, we affirm the trial court's denial of American Family's motion for summary judgment and its motion for new trial made on the ground that the evidence was insufficient to justify the verdict. In this case American Family made it very clear in its correspondence that it was of the opinion that it had no responsibility to pay or to defend. This position was made known at the beginning of American Family's involvement and no other position was ever communicated to Biegler or King even though Biegler tendered defense of Schwan's lawsuit and American Family knew it had a duty to defend under the terms of the contract of insurance. American Family's action becomes particularly egregious when one considers that it never did advise Biegler or King that it may have a duty to defend once Biegler provided proof of service of the summons and complaint. How would Biegler know what American Family was thinking when American Family did not communicate its thinking to him?

[¶ 34.] Prior to Biegler's reaching his agreement with Schwan, American Family had sufficient information to know it had a duty to defend and it failed to impart this very important information to Biegler. Based on what a reasonable insurance company should understand, American Family's initial denial was a fact that one would realize would be relied upon by another to their detriment. Knowing this, American Family failed to advise Biegler it had a duty to defend once Biegler provided it with Schwan's complaint and American Family also failed to advise Biegler it did not consider Biegler's tender as a proper tender. In sum, American Family tried to "sandbag" Biegler by not conveying important information to Biegler. As a reasonable insurance company, it knew that Biegler would have it assume defense of Schwan's complaint with that information and would not settle with Schwan outside his relationship with it. American Family's actions clearly fall within the meaning of SDCL 20–10–2(3).

[¶ 35.] Was the evidence sufficient to support a finding that Biegler suffered

compensatory damages of $100,000 as a result of the deceit? Jury interrogatory number 3 asked: "Did American Family Mutual Insurance Company make any fraudulent misrepresentations to Rick Biegler or his attorney, H.I. King?" To that question the jury answered "YES." Jury interrogatory number 4 asked: "did American Family Mutual Insurance Company act in bad faith when it breached its contractual duty to defend Rick Biegler in the lawsuit commenced by Mike Schwan?" To this the jury also answered "YES." Jury interrogatory number 7 asked: "If your answer to Question No. 3 is 'YES,' please state the amount of money that will compensate Rick Biegler for American Family Mutual Insurance Company's fraudulent misrepresentations to Rick Biegler or his attorney, H.I. King?" To this inquiry, the jury inserted "$100,000.00." Jury interrogatory number 8 asked: If your answer to either Question No. 3 or Question No. 4 is "YES," please state the amount of money that will make an example of American Family Mutual Insurance Company for its conduct. "THIS AMOUNT SHOULD NOT INCLUDE ANY MONEY AWARDED IN RESPONSE TO QUESTION NOS. 5, 6, AND 7." [3] To this inquiry the jury inserted in the blank designated as "Exemplary damages" the sum of "$100,000.00."

[¶ 36.] American Family argues that compensatory damages for a finding of deceit could not exceed the sum of $25,000, the amount paid by Biegler to settle Schwan's claim, and therefore, the evidence does not support the balance of the $100,000 award.[4] Biegler concedes that the compensatory damages would be $25,000 but then argues that the balance of the award is punitive damages. Our review of this issue is hampered by the fact that the jury was never instructed on the elements of compensatory damages for deceit or bad faith and were never instructed that they would have to find compensatory damages before they could award punitive damages for deceit or bad faith. However, from our reading of all of the instructions and the interrogatories, particularly interrogatories numbers 7 and 8, we reject Biegler's argument out of hand as interrogatory number 8 is the only time the jury was asked to award punitive damages.

[¶ 37.] From the record it is clear that Biegler proved compensatory damages in the amount of $25,000, the amount paid by him to settle Schwan's claim. The question then is whether we should reverse the trial court and order a new trial on the issue of compensatory damages, or affirm the judgment on the condition that Biegler must remit $75,000 of the $100,000 jury award, or modify the judgment to $25,000. SDCL 15–26A–12 and 15–30–2 permit this Court to either reverse, affirm, or modify any judgment or order appealed from. SDCL 15–26A–12 also allows us to either direct a new trial or direct the trial court to enter such judgment as we deem required by the record. Finally, SDCL 15–30–2 allows this court to "direct the entry of such judgment or order as the court deems required by the record."

[¶ 38.] The first option, reversal and remand for a new trial on the issue of compensatory damages, is not justified given the record and Biegler's attorney's con-

---

**3.** Jury interrogatories 5 and 6 asked the jury to indicate those amounts to be awarded for any breach of the duties to defend and pay.

**4.** During the settlement of instructions the parties did discuss what compensatory damages could be awarded as the result of the deceit and bad faith claims. They acknowledged that the pecuniary damages (i.e., out-of-pocket expenses) would be the amount of the settlement and any attorney fees and costs incurred by the insured in defending himself and in procuring the settlement. Counsel for Biegler further acknowledged that he would not be seeking any attorney fees and costs as a separate item of compensatory damage because of the difficulty of determining what portion of King's fees were attributable to this one item. Thus, it was agreed that compensatory damages could not exceed Biegler's out-of-pocket expenses of $25,000.

cession at oral argument that he only had proof of $25,000 for the same.

An appellate court generally will not exercise its discretionary power to grant a new trial unless it is satisfied that the second trial will produce different results; if it appears that no purpose may be served by ordering a new trial, the entry of judgment by the appellate court, rather than the ordering of a new trial, may be appropriate. Where it is obvious that the grounds for prejudgment relief exist, remand is unnecessary and the appellate court may use facts found by the trial court to support its disposition.

5 Am.Jur.2d *Appellate Review* § 809 (1995).

[¶ 39.] This Court has in the past both modified money judgments, *Griebel v. Ruden*, 61 S.D. 507, 249 N.W. 810 (1933), *aff'd. on rehearing*, 62 S.D. 469, 253 N.W. 447 (1934), and ordered a conditional affirmance if a party remitted a portion of the award, *First Nat'l Bank of Custer City v. Calkins*, 16 S.D. 445, 93 N.W. 646 (1903). We have particularly utilized the conditional affirmance upon remittitur in those cases where we determined that a punitive damage award was excessive. *Shippen v. Parrott*, 1996 SD 105, 553 N.W.2d 503 (*Shippen II* ); *Grynberg v. Citation Oil & Gas*, 1997 SD 121, 573 N.W.2d 493; *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1968); *Stene v. Hillgren*, 78 S.D. 1, 98 N.W.2d 156 (1959). While either disposition is appropriate here, we must determine which of the two is the most appropriate under the circumstances. Given the concessions made by Biegler's counsel, we fail to see where the result would be any different upon retrial of this case and, therefore, we elect to modify the compensatory damage verdict by reducing the amount of the award to $25,000. In doing so we emphasize that modification of a judgment, especially a money judgment, is to be used sparingly and only "when the record and evidence is such that such judgment may be rendered with confidence in the reason-

ableness, fairness, and accuracy of the decision." 5 Am.Jur.2d *Appellate Review* § 836.

[¶ 40.] **Did the trial court err in denying American Family's motion for new trial on the jury's award of punitive damages?**

[¶ 41.] American Family challenges the appropriateness of the punitive damage award on three grounds: 1) that Biegler failed to prove a tort independent of breach of contract; 2) that even if there is an independent tort, there is no sustainable recovery of compensatory damages; and 3) even if there is an independent tort and sustainable compensatory damages, Biegler failed to prove that it acted with malice.

[¶ 42.] American Family has failed to challenge on appeal the jury's finding that it was guilty of the tort of bad faith breach of insurance contract and we have already upheld the finding of deceit. It also fails to recognize our holding in *Grynberg, supra*, that while our punitive damages statute (SDCL 21-3-2) does not allow punitive damages for breach of contract, it does permit them in the case of a tort arising independent of the contract obligation including an action for deceit. Finally, it fails to recognize our holding in *Harter v. Plains Ins. Co.*, 1998 SD 59, 579 N.W.2d 625, where we held that an insured could seek punitive damages from her insurer when prosecuting a bad faith action. Thus, we reject its first argument.

[¶ 43.] As to the compensatory damages argument, we have found that Biegler did establish $25,000 in compensatory damages as a result of the tort of deceit. The $25,000 in damages was incurred, in part, as a result of American Family's refusal to defend and Biegler having to pay a settlement to Schwan. The general measure of damages for breach of an obligation not arising from contract "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." SDCL 21-

3–1. Clearly the $25,000 in compensatory damages for the deceit was also occasioned by the bad faith breach of insurance contract and for this reason we reject American Family's second argument.

[¶ 44.] American Family's third argument is that the evidence fails to establish a finding that it acted with malice. SDCL 21–3–2 allows for punitive damages when there is evidence of "oppression, fraud, or malice." *Sporleder v. Van Liere*, 1997 SD 110, 569 N.W.2d 8; *Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419 (S.D.1994). Since the statute is in the disjunctive, it only necessary to prove one of the three. *Sporleder, supra.*

[¶ 45.] Malice under the statute is either actual or presumed. *Kjerstad, supra* (citing *Holmes v. Wegman Oil Co.*, 492 N.W.2d 107, 112 (S.D.1992)).

> Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill will towards. that person. Presumed malice may not, however, be motivated by hatred or ill will, but is present when a person acts willfully or wantonly to the injury of others. It implies that the act complained of was conceived in the spirit of mischief or criminal indifference to civil obligations. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D.1991). A claim for presumed malice can be shown by demonstrating a disregard for the rights of other. *Flockhart [v. Wyant]*, 467 N.W.2d [473] at 475 [(SD 1991)].

*Case v. Murdock*, 488 N.W.2d 885, 891 (S.D.1992).

[¶ 46.] As we have already held, the evidence supports a jury finding of deceit. This alone is a sufficient basis upon which the jury's award of punitive damages is justified. However, for all of the reasons stated herein, the evidence also supports a conclusion that American Family acted with presumed malice. That is, it acted in the spirit of mischief or criminal indifference to its civil obligation to Bie-

gler or, at a minimum, demonstrated a total disregard for Biegler's rights. American Family's third argument is also rejected.

[¶ 47.] The jury awarded Biegler $100,000 in punitive damages. American Family has not challenged the amount of this award but it is appropriate (although not necessarily mandatory) that we review it in light of our modification of the compensatory damage award. Our reason is that American Family did not have notice that we might modify that award.

[¶ 48.] This Court reviews an award of punitive damages under a five-factor test. *Schaffer v. Edward D. Jones & Co.*, 1996 SD 94, ¶ 28, 552 N.W.2d 801, 810 (*Schaffer II*); *Flockhart*, 467 N.W.2d at 479. These factors are 1) the amount of compensatory damages awarded, 2) the nature and enormity of the wrong, 3) the intent of the wrongdoer, 4) the wrongdoer's financial condition, and 5) all of the circumstances attendant to the wrongdoer's actions. *Id.*

[¶ 49.] We first compare the $100,000 punitive damage award to the $25,000 in compensatory damages as modified by this Court. While we have stated that there is no bright-line rule on ratios of punitive damages to compensatory damages, we find no cause for concern here where the punitive award is merely four times that of the compensatory award. *See Veeder v. Kennedy*, 589 N.W.2d 610, 1999 SD 23, ¶ 52 n.19, 589 N.W.2d 610, 621 n.19 (citing prior cases where this Court has upheld punitive verdicts with ratios of 35 to 1, 30 to 1, 27 to 1 and 11 to 1).

[¶ 50.] The second factor to consider is the nature and enormity of the wrong. The record shows American Family knew it had a duty to defend Biegler under the terms of its contract of insurance but took the position it had no such responsibility and communicated this position to both Biegler and his attorney, King. It maintained this position until after the case had been settled.

[¶ 51.] The third factor considered is the intent of the wrongdoer. In *Schaffer II, supra,* we noted that "[t]rickery and deceit are more reprehensible than negligence." (citing *BMW v. Gore,* 517 U.S. 559, 576, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809, 826–27 (1996)). There is no question that American Family's conduct was not inadvertent or the result of negligence.

[¶ 52.] The fourth factor is the wrongdoer's financial condition. Traditionally, net worth (assets less liabilities) is the guideline for assessing the amount of punitive damages. *Schaffer II,* 1996 SD 94 at ¶ 36, 552 N.W.2d at 813. Financial records of American Family for 1996, 1997, and 1998 were entered as an exhibit at trial and available to the jury in making its determination on Biegler's request for punitive damages. The jury heard American Family's net worth was over $2 billion. The punitive damages award of $100,000 is not out of line with this company's ability to pay. *Id.* at ¶ 37, 552 N.W.2d at 813. This award is not unreasonable.

[¶ 53.] The last factor this Court must consider is all of the circumstances attendant to the wrongdoer's actions. Biegler paid yearly premiums on his store's insurance policy to provide coverage for the incident that befell Schwan. The evidence showed that American Family, knowing almost from the date the incident occurred, that it had a duty to defend under its policy with Biegler, went to great lengths to avoid this duty. The insured was left to fend for himself.

[¶ 54.] When applying all five factors, even against the reduced compensatory damage award, punitive damages in the amount of $100,000 is not unreasonable. The trial court did not err in denying American Family's motion for new trial on this award.

[¶ 55.] **Did the trial court err in awarding attorney fees per SDCL 58–12–3 for American Family's refusal to defend?**

[¶ 56.] "As a general rule, attorney fees may only be awarded by contract or when specifically authorized by statute." *City of Sioux Falls v. Kelley,* 513 N.W.2d 97, 111 (S.D.1994) (citation omitted). SDCL 58–12–3 provides in part:

> In all actions or proceedings hereafter commenced against any employer who is self-insured, or insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the Department of Labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs[.]

This statute requires the trial court to determine three things. First, whether the insurance company refused to pay the full amount of a loss. Second, whether the refusal was vexatious or without reasonable cause. And third, what is a reasonable charge for the work performed to enforce the insurance contract claim, vis-à-vis any other claims jointly brought. *Isaac v. State Farm Mutual Automobile Ins. Co.,* 522 N.W.2d 752 (S.D.1994); *Brooks v. Milbank Ins. Co.,* 2000 SD 16, 605 N.W.2d 173.

[¶ 57.] American Family makes no complaint concerning the applicability of the statute. It does complain, however, there is no evidence in the record that its refusal to defend was either vexatious or without reasonable cause. American Family also complains that the amount of attorney fees awarded is excessive in light of its costs to defend this suit.

[¶ 58.] Whether American Family's conduct was vexatious or without reasonable cause is a question of fact, reviewed by this court under the clearly erroneous standard. *Isaac,* 522 N.W.2d at 763 (citing *North Star Mut. Ins. Co.,* 484 N.W.2d at 913). While we acknowledge

that "a finding of bad faith on the part of an insurance company does not mean 'ipso facto' that its conduct was vexatious or without reasonable cause," *Isaac*, 522 N.W.2d at 762, our review of the trial court's detailed findings of fact and conclusions of law in light of the record does not leave us with the impression that the trial court was clearly erroneous. Succinctly stated, American Family did everything it could to put off, and thereby deceive, Biegler even though it knew that it had an obligation to defend him. American Family did not have a justifiable reason to deny defense of the suit and its actions are undoubtedly of a nature to vex any reasonable person.

▆ [¶ 59.] American Family contends that the trial court's allowance of $40,000 for the prosecution of the breach of contract claim was excessive in light of the fact it spent $36,292 to defend all claims, both contract and tort. Biegler's counsel, by way of affidavit, submitted an itemized hourly billing for $85,065 for all claims. Biegler's counsel further indicated by affidavit that approximately one-half of the bill was associated with the breach of contract claims. The Court also had before it an affidavit of counsel as to what was the prevailing hourly rate charged by plaintiffs' bar for this type of work. American Family's counsel submitted an affidavit in opposition to Biegler's which indicated that both the hourly rate charged and the number of hours claimed were unreasonable.

[¶ 60.] The trial court's fee award is reviewed under the abuse of discretion standard. *Brooks*, 2000 SD 16 at ¶ 20, 605 N.W.2d at 178 (citing *Rock v. Rock*, 89 S.D. 583, 236 N.W.2d 191, 194 (1975) and *DeWitt v. DeWitt*, 86 S.D. 59, 191 N.W.2d 177 (1971)). The phrase abuse of discretion refers "to a discretion exercised to an end or purpose not justified by, and clearly

against, reason and evidence." *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981).

[¶ 61.] Even though there is a disagreement between counsel as to what is reasonable, we cannot find an abuse of discretion by the trial court. Therefore, we affirm the trial court's award.

## SUMMARY

[¶ 62.] We affirm the trial court's denial of American Family's motions for summary judgment and new trial on Biegler's claim for breach of American Family's contractual duties to defend and to pay and on his claim for deceit. We affirm the trial court's denial of American Family's motion for a new trial on the issue of compensatory damages for deceit, but modify the amount of this award to $25,000. We affirm the trial court's denial of American Family's motion for a new trial on the issue of punitive damages for deceit and bad faith. We affirm the trial court's award of attorney fees in the amount of $40,000, per SDCL 58–12–3, for American Family's vexatious refusal to defend. We remand to the trial court to enter a new judgment reflecting the modification and recomputing prejudgment interest.[5]

## APPELLATE ATTORNEY FEES

▆ [¶ 63.] Per SDCL 58–12–3 Biegler seeks appellate attorney fees for his defense of the breach of contract claims. His counsel claims to have spent 96.30 hours defending American Family's appeal and estimates that one-half of that time or 48.25 hours can be attributed to the breach of insurance contract issues. At a claimed rate of $150 an hour, Biegler is asking for appellate attorney fees of $7,222.50. American Family responds that Biegler's request is unreasonable as its total billing for prosecution of this appeal is only $4,756.82

---

5. We note that the $25,000 awarded by the jury for the breach of contract and the $25,000 compensatory damage award for deceit are the same item of damage and can only be awarded once in the money judgment.

Thus, the money judgment would include the following: 1) compensatory damages of $25,000 plus prejudgment interest; 2) punitive damages of $100,000; and 3) attorney fees of $40,000.

and that, further, there is no basis for such an award in the first instance.

[¶ 64.] SDCL 58–12–3 does allow this Court to award reasonable attorney fees when we affirm a trial court's finding that an insurer has refused to pay the full amount of an insured's loss and that the refusal was vexatious or without reasonable cause. Since we have upheld the trial court's insurance and attorney fee rulings, we will grant Biegler reasonable appellate attorney fees pertaining to the insurance coverage issues in the amount of $2,750.

MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

JOHNS, Circuit Judge, for KONENKAMP, Justice, disqualified.