1996 SD 74

**Sherry CAVENDER, as Guardian of Deonne Renae Cavender, Natural Daughter of Employee Matthew O'Connor, Plaintiff and Appellant,**

v.

**BODILY, INC., and Aetna Casualty and Surety Co., Defendants and Appellees.**

No. 19198.

Supreme Court of South Dakota.

Considered on Briefs March 13, 1996.

Decided June 19, 1996.

Douglas E. Hoffman of Gibbs, Feyder, Myers, Peters & Hoffman, Sioux Falls, for plaintiff and appellant.

J.G. Shultz and Tim R. Shattuck of Woods, Fuller, Shultz & Smith P.C., Sioux Falls, for defendants and appellees.

FITZGERALD, Circuit Judge.

[¶ 1] This matter was before the circuit court on appeal from an order of the Department of Labor[1], which awarded claimant Sherry Cavender, as guardian of her minor daughter, Deonne Renae Cavender, worker's compensation survivor benefits. Appeal is now taken from the circuit court's order granting the employer and insurer's motion for leave to present additional evidence pursuant to SDCL 1–26–34. We reverse and remand to the circuit court to consider the merits of the appeal from the order of the Department of Labor.

1. Appellate counsel did not participate in the administrative hearing.

## Facts and Procedure

[¶ 2] Matthew O'Connor was employed by Bodily, Inc., whose worker's compensation insurer was Aetna Casualty and Surety Company. Bodily, Inc., (Employer) contracted with the United States Corps of Engineers for a painting project involving two surge tanks at the Ft. Randall Dam near Pickstown, South Dakota.

[¶ 3] On October 27, 1989 O'Connor's job was to sandblast the interior of one of the surge tanks. O'Connor performed his work from atop a suspended scaffold, which was attached by two steel cables to an I-beam positioned on the top of the tank. O'Connor's employer provided him with a safety belt to be worn around his waist, and a "lifeline" consisting of a lanyard, a rope grabber and a safety line which was attached to the same I-beam as the scaffolding.

[¶ 4] On the day of the accident, O'Connor was engaged in sandblasting the ceiling of the surge tank. His work partner that day was Mark Winckler. Winckler had climbed out an aeration window, through which the cables suspending the scaffolding were extended, and was sandblasting areas not accessible from the scaffolding. Suddenly, the sandblast hose was jerked through Winckler's legs. When Winckler looked down, the scaffolding was gone. O'Connor and the scaffolding were found on the floor of the surge tank.

[¶ 5] O'Connor died on October 27, 1989 as a result of injuries sustained in his fall. On December 15, 1989, Deonne Renae Cavender was born; she is the natural daughter of Matthew O'Connor. Through her guardian, she seeks compensation for her father's death pursuant to the worker's compensation provisions contained in SDCL 62–4–12 and–4–13.

[¶ 6] At the hearing before the Department of Labor, the parties stipulated to the admission of a report prepared by Edward V. Bravenec, Ph.D., P.E., a metallurgical engineer. Dr. Bravenec's analysis concluded that the cable suspending the right side of O'Connor's scaffolding failed as a result of damage from sandblasting, which in turn caused a ductile shear of the left cable.

[¶ 7] The primary dispute between the parties involved the application of SDCL 62–4–37, which in relevant part provides:

> No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including ... willful failure or refusal to use a safety appliance furnished by the employer.

The evidence was clear that at the time of his fall O'Connor's safety belt was not attached to the lifeline. The evidence suggested that O'Connor willfully disconnected himself from the lifeline, because it caused difficulty maneuvering on the scaffolding when it was positioned near the ceiling of the surge tank. Had O'Connor been attached to the lifeline, he would have been subjected to a free fall of ten to twenty feet. This limited fall would result from the slack in the lifeline, which slack was necessary to allow O'Connor to maneuver the length of the scaffolding.

[¶ 8] Employer's expert was Dr. V.R. Nelson, a professor of physics. Dr. Nelson opined that O'Connor would have been injured in the fall, but not killed, if he had been attached to the lifeline. The claimant's expert was Michael Ollerich, a registered professional engineer. In contrast to Dr. Nelson, Ollerich opined that O'Connor would have been killed whether or not he had been attached to the lifeline. Ollerich based his conclusion on five scenarios, to-wit: 1) O'Connor's slack line would have tangled in the scaffolding as it fell; 2) wearing only a safety belt instead of a harness, the limited free fall would have killed O'Connor; 3) O'Connor's weight and body type would have caused him to come out of the belt when the slack in the line tightened; 4) O'Connor would have swung into the tank's wall head first and died; and 5) before he could be retrieved, O'Connor would have suffocated while dangling from the lifeline.

[¶ 9] Unfortunately, neither of these witnesses were qualified to render such opinions, since they lacked the medical expertise to determine the effect of the limited free fall on the human body. Nevertheless, the administrative law judge allowed the admission of these opinions, reasoning that the qualifications of the witnesses went to the weight of the testimony and not its admissibility.

[¶ 10] Department of Labor awarded the claimant benefits under the provisions of SDCL 62–4–12 and 62–4–13. In so doing, Department rejected the employer's defense under SDCL 62–4–37, relating to an employee's willful misconduct. The Department's findings of fact rejected the testimony of Dr. Nelson as not credible and lacking in evidentiary foundation, specifically finding that he lacked the medical expertise to render an opinion as to the effect of the limited free fall.

[¶ 11] Department did not expressly find that Mr. Ollerich possessed the medical expertise required in order to render his opinions. However, Department did consider his alternative theories as "probable" outcomes, which Employer did not have qualified evidence to refute. Ultimately, Department concluded that Employer did not meet its burden of showing that if O'Connor had been attached to the lifeline he would not have been killed.

[¶ 12] Following Department's decision, Employer appealed to the circuit court. Employer did not raise any issue of evidentiary error as part of its statement of issues on appeal. Two days prior to a scheduled hearing on the merits of the appeal before the circuit court, Employer filed its motion for leave to present additional evidence, pursuant to SDCL 1–26–34.

[¶ 13] As part of that motion, Employer raised for the first time its concern that the administrative law judge errantly considered the medical opinions of Ollerich, and rejected the opinions of the Employer's expert. Employer's motion sought leave to present the testimony of Dr. W.R. "Mike" Scott, an engineer with expertise in biomechanical assessment of accidents. The basis of Employer's motion was an unawareness of some of the scenarios upon which Ollerich based his opinions. In addition, the motion was based on nondisclosure that Ollerich had consulted a pathologist, who apparently confirmed Ollerich's opinions.

[¶ 14] Judge Zinter granted Employer's motion,[2] citing various evidentiary errors

committed by the administrative law judge. Claimant now seeks our review of the circuit court's order.

### Analysis

[¶ 15] The sole issue on this appeal is whether the circuit court abused its discretion in granting the Employer's motion for leave to present additional evidence. The Employer's motion was granted pursuant to SDCL 1–26–34, which in relevant part provides:

> If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court.

The statutory language clearly provides that leave may be granted only if a motion is made prior to the date set for hearing, and the court finds that the evidence is material and that good reasons exist for the failure to present the evidence before the agency. *Beville v. Univ. of S.D./Bd. of Regents*, 420 N.W.2d 9, 13 (S.D.1988); *Matter of Gridley*, 345 N.W.2d 860 (S.D.1984).

[¶ 16] We review the circuit court's findings under an abuse of discretion standard. *Beville*, 420 N.W.2d at 13. An abuse of discretion is the exercise of discretion to an end or purpose not justified by, and clearly against reason and evidence. In determining whether the trial court abused its discretion, our inquiry is not whether we would have made the same ruling, but whether a judicial mind could have made a similar decision in view of the law and the particular circumstances of the case. *Johnson v. Johnson*, 468 N.W.2d 648 (S.D.1991).

[¶ 17] In this case, Employer did present its motion for leave prior to the date set for the circuit court's hearing on the

---

2. The circuit court's order was entered pursuant to SDCL 1–26–34. Because the original administrative law judge no longer worked for the

Department of Labor, however, the circuit court actually remanded the matter for a new trial.

merits of the appeal.[3]  In addition, we fully agree with the circuit court's finding that competent medical testimony would have been material to the Department's analysis. The primary issue for the Department's consideration directly involved the injury that O'Connor would have suffered as a result of a ten to twenty foot free fall while attached to the lifeline.  Neither party presented competent evidence on this critical issue.[4]  *Cf. Matter of Gridley*, 345 N.W.2d at 863 (holding that it was improper for the circuit court to grant leave for the presentation of cumulative evidence).

[¶ 18] We part with the circuit court's ruling only in regard to the finding of good reasons for the failure of Employer to present the additional evidence before Department.  The circuit court found the existence of good reasons based on the following: 1) the significance attributed by the Department to the lack of medical foundation; 2) the receipt of undisclosed testimony relating to confirmation of Ollerich's testimony by a pathologist;[5] and 3) the receipt of testimony by Ollerich regarding alternative theories of how O'Connor would have been killed, although these too were not disclosed to the Employer during discovery.  We view these latter two grounds as evidentiary errors by the administrative law judge.

[¶ 19] We have already discussed the importance of medical foundation in this case.  Employer bore the burden of proving by a preponderance of the evidence that willful misconduct by O'Connor was a proximate cause of his death.  SDCL 62–4–37; *Driscoll v. Great Plains Mktg. Co.*, 322 N.W.2d 478 (S.D.1982)(equating "due to" as used in SDCL 62–4–37 with "proximate cause" under the law of negligence).  Thus, Employer needed to prove that O'Connor's failure to attach to the lifeline was willful misconduct,[6]

and that such misconduct was a proximate cause of his death.  When an injury may have had several contributing or concurring causes, as in this case, willful misconduct will bar recovery only if it was a substantial factor in causing the injury.  *Driscoll*, 322 N.W.2d at 479–80.

[¶ 20] O'Connor's scaffolding collapsed because the supporting cables broke.  This factor is wholly unrelated to any alleged willful misconduct by O'Connor.  The collapse of the scaffolding would have occurred whether or not O'Connor was attached to his lifeline. At best, the lifeline would have stopped O'Connor after a free fall of ten to twenty feet, which Employer acknowledges would have caused some injury to O'Connor.  Thus, the burden was on Employer to prove, in light of these circumstances, that the alleged willful misconduct was a substantial factor in causing the death of O'Connor.  *Id.*  In order to do so, evidence was needed to establish the extent of injury that would have resulted from a fall of up to twenty feet. This element of the defense required more than mere evidence of the forces and mechanics associated with the fall.

[¶ 21] The Employer did in fact attempt to offer evidence that O'Connor would have been injured, but would have survived a fall of ten to twenty feet while attached to the lifeline.  Clearly, this was not a case where a party was unaware of the elements of proof necessary to sustain its defense.  This was a case involving a party who failed to present competent evidence on a material, known element of its defense.  The Employer knew it needed to establish a difference in the injury actually suffered, and the injury that would have been suffered if the safety equipment had been worn.  The Employer's expert, a professor of physics, simply did not

---

3.  Although the Employer gave notice of its motion just a day prior to the hearing, such notice cannot be said to be inconsistent with the broad language of the statute.

4.  Both Mr. Ollerich and Dr. Nelson were qualified to render opinions regarding the forces and mechanics of the fall, but neither appear to have had the medical expertise to render opinions regarding how such forces would affect the human body.

5.  Ollerich testified that this consultation occurred the day before trial, and that the pathologist merely confirmed what he had already surmised to be the probable result of the limited free fall.

6.  We note that the Department never reached the issue of whether O'Connor's disconnecting from the lifeline was in fact willful misconduct.

have the expertise to render an opinion in this regard.

[¶ 22] The Employer and the circuit court both reference the Department's apparent acceptance of Ollerich's opinions relating to the effect of a fall while attached to the lifeline. Ollerich's testimony was offered to prove that O'Connor would not have survived a limited fall. As indicated, some of these opinions appear to be beyond his expertise. Even assuming Ollerich's testimony should have been excluded, however, the Employer's burden remained the same. Employer needed to establish that O'Connor would have survived the fall if he had been attached to the lifeline. Regardless of whether Ollerich's testimony should have been excluded, Employer failed to support its own affirmative defense. Thus, if Ollerich's testimony had been excluded, no probative evidence would exist to support the claim of either party. Where no probative evidence is offered, the party who bears the burden of proof must lose. *Frank Stinson Chevrolet, Inc. v. Connelly*, 356 N.W.2d 480, 483 (S.D.1984).

[¶ 23] The Employer's choice of expert, with knowledge of the limits of his expertise and the proof required, was a matter of trial strategy. The fact that the strategy was flawed does not justify the granting of leave to present addition evidence.

[¶ 24] The remaining grounds, upon which the circuit court granted leave to present additional evidence, consisted of evidentiary errors committed by the administrative law judge. The receipt of testimony regarding matters which were not disclosed during discovery is the primary example. Clearly, it was not disclosed prior to trial that Ollerich had consulted a pathologist, who reportedly confirmed the opinions Ollerich had already developed. It is significant, however, that the claimant did not elicit this testimony. It was during cross-examination by the Employer that Ollerich first testified regarding the consultation with a pathologist.

[¶ 25] To the extent that such a consultation may have bolstered Ollerich's testimony, we cannot find this to be good cause to allow the presentation of additional evidence. It is clear that the burden remained with Employer to present competent medical evidence.

Ollerich's testimony highlighted the need for medical expertise, but did not create a new element of Employer's defense. Even if Ollerich's testimony had been stricken, Employer would still have had the problem that no competent evidence supported the proposition that the lifeline would have saved O'Connor's life.

[¶ 26] Finally, good cause for leave was based on the receipt of testimony by Ollerich regarding alternative theories of how O'Connor would have been killed, because these theories were not disclosed to the Employer during discovery. At worst, receipt of such evidence was evidentiary error. Such errors are significant to an appeal on the merits, but cannot support a finding of good cause under SDCL 1–26–34. Allowing leave to present additional evidence would not purge the agency's consideration of untrustworthy evidence. If such error cannot be corrected prior to the agency's final consideration, the issue can be raised in the merits of an appeal.

### Decision

[¶ 27] We reverse the circuit court's order granting leave to present additional evidence, and remand to the circuit court for consideration of the merits of Employer's appeal from the decision of the Department of Labor.

[¶ 28] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 29] FITZGERALD, Circuit Judge, for AMUNDSON, J., disqualified.