2003 SD 82

Kyle LEWIS, Claimant and Appellee,

v.

South Dakota STATE DEPARTMENT OF TRANSPORTATION and South Dakota Bureau of Personnel, Employer and Appellants.

Nos. 22562, 22581.

Supreme Court of South Dakota.

Argued Feb. 13, 2003.

Decided July 16, 2003.

John Stanton Dorsey of Whiting, Hagg & Hagg, Rapid City, South Dakota, Attorneys for claimant and appellee.

Timothy M. Engel of May, Adam, Gerdes & Thompson, South Dakota, Attorneys for employer Pierre and appellants.

KERN, Circuit Judge.

[¶ 1.] South Dakota Department of Transportation (DOT) and South Dakota Bureau of Personnel (BOP) (collectively referred to as Employer) appeal a decision of the circuit court affirming the Department of Labor's (DOL) award of attorney fees to Kyle Lewis as a consequence of DOT's refusal to compensate him for medical costs incurred after an injury.

[¶ 2.] Employer also challenges the circuit court's award of attorney fees to Lewis for the appeal to circuit court. We affirm.

## BACKGROUND

[¶ 3.] Lewis is a senior highway maintenance worker for DOT. On July 31, 1998 he was operating a road sweeping device attached to his truck. The device was operated by means of a metal remote control box which was located inside the truck's cab and connected to the sweeper by a power cord that extended through the window. As Lewis and his co-worker drove along, something caught the cord from outside the truck and yanked the metal box out of the window, striking Lewis in the face. He suffered a two-inch laceration on his chin which partly penetrated through to his mouth and required eighteen stitches to repair. The blow also damaged veneers on his four front teeth

which covered dark stains that had resulted from medications he took during childhood. One of his teeth was knocked from his jaw, embedded in the back of his mouth and had to be reattached.

[¶ 4.] Lewis was referred to a dentist, Dr. Loftus, who recommended replacement of all four veneers. Dr. Loftus testified by deposition that the chips on all the veneers were immediately noticeable to him when he viewed Lewis' face. He also opined that the chips could allow food to enter the area between the remaining veneer and the teeth and promote tooth decay and deterioration. By letter dated November 10, 1998, Dr. Loftus contacted Lynn Job, BOP administrator, to inquire about the compensability for replacement of the veneers. As administrator, it was Job's responsibility to serve as adjuster for Lewis' claim.

[¶ 5.] Job did not seek any additional information from Dr. Loftus initially. Instead, on December 7, 1998, she e-mailed James Marsh, Director of the Division of Labor and Management for DOL, the supervisor of DOL's hearing examiners. The following exchange occurred:

*Question from Job:* I have a situation where an employee was hit in the mouth and required root canal treatment on two teeth. We paid for the root canal treatment however, prior to the accident he had veneers put on his teeth. I have been informed that veneers are used mainly for cosmetic purposes. He claims that two veneers not on the teeth requiring the root canal treatment were chipped by this accident.

Because they were cosmetic, are they considered a necessary medical expense under work comp?? Are we required to pay to replace the chipped veneers?

*Answer from Marsh:* Hmm. I guess it depends on whether a veneer can be considered a "medical supply," or a "denture," or if the absence of the veneer can be considered "disfiguring" so that it must be replaced for the employee to look to the world like he did before he got smacked.... My guess, anyway, is that he only gets the veneer replaced if you can see the chips when he smiles. Seriously.

[¶ 6.] Following this exchange, Job contacted Dr. Loftus by phone. She testified that he answered "no" when asked whether the chips on the two "outside" teeth, referred to as # 7 and # 10, would be visible when Lewis smiled. At his deposition, Dr. Loftus could not recall having said that the chips would not be visible.

[¶ 7.] Job denied the claim for the veneer replacement. In her December 10, 1998 letter to Lewis communicating the denial, she indicated that the veneers were cosmetic and they were not injured. At the administrative hearing, she indicated that she based this decision on Marsh's e-mail and her understanding that the veneers would not be visible when Lewis smiled. Job sought no further medical opinions before issuing the denial. Additionally, she did not conduct further investigation into the visibility of the chips.

[¶ 8.] Dr. Ruth McLaughlin, who first treated Lewis' lacerations, referred him to Dr. Richard Carver, a plastic surgeon. Her letter of referral indicated that:

his residual healing leaves him with some swelling on his face above the laceration and some thickening of particularly the distal part of his laceration. I think there is probably some lymphatic obstruction from the injury giving him some puffiness. In my opinion, it would be reasonable to have this secondarily repaired.

On February 4, 1999, Dr. Carver sent a letter to BOP regarding Lewis. That letter stated: "[T]he scar is still visible, due

to the underlying muscle is bulging, making the scar more visible. I would strongly recommend this scar revision and defatting of the scar to the underlying tissue and muscle."

[¶ 9.] Job received and read Dr. Carver's letter on February 8, 1999. The next day she e-mailed Marsh again and the following exchange occurred:

*Question from Job:* What is our responsibility relating to plastic surgery? We had someone get stitches on his face which left a scar? Is plastic surgery to remove a scar considered a necessary medical expense?

*Answer from Marsh:* Holy cow, you're full of questions today! Our rule has been that the surgery is necessary if there is some connection with one's ability to earn money. Model, slam dunk. Salesman, strong argument. Dock worker, get real.

The following day she denied Lewis' request for compensation. She made no attempt to investigate further, obtain an independent medical examination, or view photos of the scar. Her denial was solely based on the e-mail from Marsh.

[¶ 10.] On March 8, 1999 Lewis petitioned DOL for compensation for damage to his teeth and surgery to repair the facial scar and also made a claim for permanent disfigurement pursuant to SDCL 62-4-6(24). He requested attorney fees based on allegations that the denial on the part of employer's administrator was without medical foundation, unreasonable, vexatious and without any support in law, and in "bad faith," pursuant to SDCL 58-12-3. On June 1, 2000, after a full hearing on the merits, the Administrative Law Judge (ALJ) found the claims to be compensable. The ALJ maintained jurisdiction over the issue of whether any permanent partial disability benefits might be owed to Lewis for disfigurement following the scar revision surgery.

[¶ 11.] Lewis submitted an affidavit for attorney fees on October 6, 2000. Employer moved for summary judgment on the issue of attorney fees, contending that they were not justified by the facts, that the State was immune from suit for attorney fees, and that the request for fees was untimely. By order dated January 16, 2001, the ALJ denied summary judgment.

[¶ 12.] On June 15, 2001, a hearing was held on the issue of whether attorney fees should be awarded under SDCL 58-12-3. The ALJ issued a decision on November 21, 2001, determining that the denial of Lewis' benefits was unreasonable. Findings of fact, conclusions of law and an order were entered to that effect on December 12, 2001. The ALJ specifically determined that State was a self insurer for the purposes of workers' compensation claims and that SDCL 58-12-3 authorizes an award of attorney fees against State. After additional briefing, the ALJ entered an amended order on February 7, 2002, finding that Lewis was entitled to an award of reasonable attorney fees and costs in the amount of $18,219.15.

[¶ 13.] Employer appealed the intermediate order of January 16, 2001 denying summary judgment, the order of December 12, 2001 and the amended order of February 7, 2002. The circuit court consolidated the appeals, affirmed the ALJ on all issues, and awarded Lewis an additional $5,888.93 for attorney's fees. DOT appeals each of these decisions.

ISSUE ONE

[¶ 14.] **Whether State was a self insured employer subject to an award of attorney fees under SDCL 58-12-3.**

[¶ 15.] Employer contends the State is not a self insured employer as that

term is defined and therefore not subject to an award of attorney fees. SDCL 58–12–3 provides:

> In all actions or proceedings hereafter commenced against any employer who is self-insured, or insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the Department of Labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company, exchange or self-insurer before the commencement of the action or proceeding in which judgment or an award is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed. The allowance of attorney fees hereunder shall not be construed to bar any other remedy, whether in tort or contract, that an insured may have against the same insurance company or self-insurer arising out of its refusal to pay such loss.

[¶ 16.] By its plain language, SDCL 58–12–3 applies to all actions or proceedings commenced against any employer who is self insured. SDCL 62–1–2 provides that "the term 'employer' includes the state" as used in SDCL Title 62. In turn, SDCL 62–5–5 explicitly allows employers to self-insure if they meet the requirements of SDCL Title 58. In addition, the legislature has authorized the State to provide for self-insurance pursuant to SDCL ch 3–12A. In short, the plain language of SDCL 58–12–3, considered in *pari materia* with the other pertinent statutes, indicates that the State may elect to be a self-insured employer.

[¶ 17.] Employer asserts that SDCL 62–5–6 exempts the State from the self insurance scheme and consequently from attorney fees awarded pursuant to SDCL 58–12–3. SDCL 62–5–6 provides:

> This state or any municipality or other political subdivision of the state need not furnish any insurance or security as provided by §§ 62–5–1 to 62–5–5, inclusive, or §§ 62–5–10 to 62–5–12, inclusive, but may do so if it desires.

[¶ 18.] Employer maintains that legislative history clarifies this exemption: it asserts that prior to 1996 the assessment of attorney fees was explicitly confined to a class of self insurers from which the state was excluded. At that time, in authorizing awards of attorney fees against self insurers, SDCL 58–12–3 specifically referenced SDCL 62–5–4 which authorized self insurance. Employer argues that SDCL 62–5–6 exempted the State from the operation of SDCL 62–5–4. Subsequent statutory amendments have repealed both SDCL 62–5–4, and the reference to that statute in SDCL 58–12–3, while leaving intact the option of self-insurance as a means of securing workers' compensation obligations. However, Employer contends that the purported earlier and explicit exemption of the State from self insurance provisions presumptively still exists.

[¶ 19.] Employer's argument grossly misconstrues the nature of the exemption contained in SDCL 62–5–6. That statute, in its prior and present forms, merely provides that State and its subdivisions are not limited to the alternatives provided in SDCL ch 62–5 for securing their obligations to provide workers' compensation.[1]

---

1. Those alternatives include obtaining insur- ance from a stock corporation or mutual em-

Private employers, on the other hand, must choose among those options pursuant to that chapter. In other words, while self insurance is optional for both State and private employees, State is allowed more choices for securing its requirements to pay compensation. Therefore, State is exempted from the limitation in SDCL ch 62–5 to those specific alternatives. Yet, the greater range of options allowed for State or its subdivisions does not somehow exempt them from consideration as self insurers for purposes of SDCL 58–12–3 once they have chosen that alternative for meeting compensation obligations. If either State or private employers opt to self insure in order to provide workers' compensation they are subject to the provisions of SDCL 58–12–3.

## ISSUE TWO

**[¶ 20.] Whether Employer was protected by sovereign immunity.**

 [¶ 21.] In light of the fact that the legislature authorized State to become a self-insurer, subject to attorney fees, we hold that State is not protected by sovereign immunity from an award of such fees under SDCL 58–12–3. Only an express statutory waiver removes sovereign immunity. *Arcon Construction, Inc. v. South Dakota Cement Plant*, 349 N.W.2d 407, 410 (S.D.1984). In *Arcon*, this Court found that the South Dakota Legislature had expressly waived immunity for the state cement plant by enacting the Unified

Commercial Code (UCC). *Id.* at 411. The UCC as then enacted applied to "organizations," defined as "government or governmental subdivisions or agencies." *Id.* at 410. Furthermore, the UCC included cement as one of the "goods" to which the act applied. *Id.* Finally, the UCC provided a buyer specific rights against a seller. *Id.* at 411. Consequently, plaintiff was entitled to maintain an action against the cement plant for breach of a sales contract.

[¶ 22.] Similarly, and as previously mentioned, South Dakota's worker compensation act and SDCL 62–1–2 include the State within the definition of "employer." SDCL 62–5–5 explicitly allows employers to self-insure if they meet the requirements of SDCL Title 58. Specifically, SDCL 58–12–3 allows attorney fees to be assessed against "any employer" who is self insured. These statutes waive immunity for the State once it has elected to provide insurance.

## ISSUE THREE

[¶ 23.] **Whether Lewis' claim for attorney fees was untimely.**

 [¶ 24.] Employer asserts that SDCL 58–12–3.1 [2] required the petitioner to request a hearing on the issue of attorney fees within ten days after the ALJ issued its order awarding attorney fees to Lewis. Failure to do so, according to Employer, waived the claim despite the fact

---

ployers liability association (SDCL 62–5–2), or insuring payment "in some association organized for the exchange of reciprocal or interinsurance contracts with each other by individuals, partnerships, or corporations of this state for the purpose of providing indemnity among themselves." SDCL 62–5–3.

2. SDCL 58–12–3.1 provides:
 The determination of entitlement to an allowance of attorney fees as costs and the amount thereof under § 58–12–3 shall be

made by the court or the Department of Labor at a separate hearing of record subsequent to the entry of a judgment or award in favor of the person making claim against the insurance company, and, if an allowance is made, the amount thereof shall be inserted in or added to the judgment or award. Such a hearing shall be afforded upon the request of the claimant made within ten days after entry of the judgment or award.

Lewis included a request for attorney fees in his original petition. In other words, Employer argues that the request for a hearing can only be made within a ten day post-award window. This argument rests partly on the fact that the statute in question requires a separate hearing, therefore, Employer reasons there must be a separate request from the initial proceeding. Additionally, Employer argues that if a request for attorney fees in the petition is sufficient, in many instances nothing would limit the time within which the claimant could present the matter for hearing. Finally, Employer asserts that absent enforcement of the ten day time limitation on such requests the statute would be superfluous. We disagree.

[¶ 25.] Nothing in the plain language of SDCL 58–12–3.1 supports this argument. The necessary "request" for a hearing is not described in such a manner that it requires a "post-award" request accompanied by an explicit and simultaneous demand for a separate hearing. The language of SDCL 58–12–3.1 only mandates a separate hearing before the question of attorney fees may be decided. The statute thus effectively makes *any* request for attorney fees in these proceedings equivalent to a request for such hearing, even a request contained in the initial petition on the underlying claim against the insurer. The statute does not require that the hearing on attorney fees actually be held within the statutory ten day period following the award. Furthermore, there is no requirement of a submission of a detailed or itemized list of fees within that period. *Compare* SDCL 15–6–54(d)(providing that an application for costs and disbursements shall be made within thirty days of the entry of a judgment, including a detailed statement of the costs and disbursements claimed and verified by affidavit). In other words, the very general requirement concerning the request for a hearing in

SDCL 58–12–3.1 can be met by a request for attorney fees in the petition.

[¶ 26.] A *pre-award* request for attorney fees suffices to provide notification to the Employer in these proceedings. This is illustrated in this instance by the fact that just days prior to the ALJ's decision, favorable to Lewis, the parties entered a stipulation which indicated that Employer waived its right to appeal the decision and also stated: "Nothing in this stipulation is intended to act as a waiver of the right of Employer and Insurer to contest any claim that might be made by [Lewis] for costs and attorney fees." Clearly, Employer cannot claim that it was surprised by the request for attorney's fees.

[¶ 27.] Moreover, we are not convinced by Employer's argument that allowing pre-award requests for attorney fees under this statute would allow an unlimited time period within which a claimant could ultimately submit the question to the hearing examiner. Once attorney fees have been requested, the statute leaves the timing of the separate hearing to the discretion of the administrative law judge or the court.

[¶ 28.] In the absence of explicit time barriers, that discretion should be exercised with a goal toward not prejudicing or surprising the affected party and not allowing unreasonably tardy requests. *See, e.g., White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 454· 102 S.Ct. 1162, 1167–68, 71 L.Ed.2d 325 (1982)(construing federal statutes that did not contain explicit time limits on requests for costs and attorney fees). In this instance, Employer makes no claim that it was prejudiced or surprised and the record contains no evidence of such. The plain language of SDCL 58–12–3.1, which requires a request for attorney fees within ten days of entry of a

favorable judgment or award, is broad enough to encompass a request made in the initial petition in the underlying matter. For these reasons, the request for fees was not time barred.

## ISSUE FOUR

[¶ 29.] **Whether the denial of benefits was without reasonable cause.**

[¶ 30.] The ALJ found that BOP's refusal to pay for the veneers or scar surgery was without reasonable cause. SDCL 58–12–3 authorizes fees when the insurer's refusal to pay is determined to be vexatious or without reasonable cause. This determination constitutes a finding of fact. *See Sawyer v. Farm Bureau Mutual Insurance*, 2000 SD 144, ¶ 29, 619 N.W.2d 644, 652. As such, it is subject to review under the "clearly erroneous" standard. Under this standard,

> [t]he question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding. In other words, even if there is evidence in the record which tends to contradict Department's factual determinations, so long as there is some "substantial evidence" in the record which supports Department's determination, this court will affirm.

*Howie v. Pennington County*, 1997 SD 45, ¶ 6, 563 N.W.2d 116, 117.

[¶ 31.] After a careful review of the record we are not convinced a mistake has been committed. The record supports the ALJ's finding that there was no reasonable basis on which to deny Lewis' claims. First, the claim administrator offered inconsistent justifications for her decision denying compensation for the veneers. Her letter accompanying the denial indicated that the veneers were "not injured" and were for "cosmetic reasons." Yet, if the veneers were not compensable because they were cosmetic, then whether they were "injured" would be immaterial. Furthermore, the director's reasoning, on which the administrator purportedly relied, was not that cosmetic procedures were not compensable, but that the veneers were only compensable if the chip was visible when the subject smiled. The fact that these three purported grounds for the denial were inherently conflicting undermined the weight of each of them.

[¶ 32.] Even ignoring those inconsistencies and independently examining the administrator's proffered grounds, the evidence indicates that those grounds lacked reasonable support. The assertion in the letter that the veneers were not injured is directly contradicted by Dr. Loftus' opinion that all four of the veneers were chipped in spots. The ALJ found that the administrator had not sought, nor did she offer at the hearing, a second medical opinion to contradict Dr. Loftus.

[¶ 33.] To the extent that the administrator relied on the simple fact that veneers are cosmetic, her reasoning ignores SDCL 62–4–6(24) which provides compensation for "permanent disfigurement." Likewise, to the extent that the administrator's opinion may have depended on an assessment that the veneers in question were not visible, that conclusion is undercut by evidence to the contrary. While the administrator testified that Dr. Loftus had answered "no" when asked whether the veneers in question would be visible when Lewis smiled, Dr. Loftus could not remember having told her that the damage would not be noticeable. Additionally, at his deposition he testified that he had noticed the chips "right away" and that "[t]hey are his front four teeth, so I would imagine they would be visible to other people." Presumably, Dr. Loftus would not have recommended replacement were the chips

not visible. Dr. Loftus' opinion that the veneers should be replaced was also supported by his concern that food and bacteria could enter the chipped areas, thus promoting tooth decay and cavities. This is further support for the reasonableness and medical necessity of replacing the veneers. Finally, the administrator did not dispute that Dr. Loftus had recommended that all four veneers be replaced. Given the medical expert's determination, Employer had the burden to show that the recommended treatment was not "necessary, suitable or proper." *See Hanson v. Penrod Construction Co.*, 425 N.W.2d 396, 399 (S.D.1988).

[¶ 34.] Similarly, Department's reasoning for denying compensation for the cost of scar removal was not only internally inconsistent, but it also disregarded the statutory coverage for permanent disfigurement and ignored the non-cosmetic aspect of the scars. Having earlier indicated that veneer replacement could be compensable if visible, the administrator, relying solely on the director's e-mail response, determined that removal of a scar was only compensable if it adversely affected his ability to perform his work. By adding a new condition to recovery for injuries of a "cosmetic" nature, this denial of compensation for scar removal ignores the plain language of SDCL 62-4-6(24). That subsection provides compensation "for permanent disfigurement, or permanent disability resulting from injury to any part of the body not hereinbefore listed." Disfigurement and disability are listed in the disjunctive. Recovery for the disfigurement does not depend on whether it creates a disability. The administrator admitted her awareness of this statute but she chose to disregard it.

[¶ 35.] The record supports the need to remove the scar and indicates the potential health implications for failure to remove it.

Two doctors stated that it would be reasonable to repair the scar, which had been created by a two inch laceration requiring some eighteen stitches. In fact, one of the doctors indicated that the injury had caused some lymph obstruction, with resultant swelling. The administrator made no effort to independently investigate the size or appearance of the scar either by meeting with Lewis or reviewing photographs of the scar. Ignoring the doctors' assessments, and lacking any independent medical opinions to the contrary, she denied compensation on the basis that disfigurement must amount to vocational disability, a position not supported by SDCL 62-4-6(24).

[¶ 36.] The findings concerning the unreasonableness of the denial of compensation for scar removal surgery are supported by the weight of the record. Consequently, the ALJ's findings were not clearly erroneous.

ISSUE FIVE

[¶ 37.] **Whether the amount of the award of attorney fees under SDCL 58-12-3 should be limited as a matter of law in accord with SDCL 62-7-36.**

[¶ 38.] Having held that attorney fees are awardable we decline to adopt Employer's position that SDCL 62-7-36 operates to limit the amount of such fees as a matter of law. That statute provides:

Except as otherwise provided, fees for legal services *under this Title* shall be subject to approval of the department.

Attorneys' fees may not exceed the percentage of the amount of compensation benefits secured as a result of the attorney's involvement as follows:

(1) Twenty-five percent of the disputed amount arrived at by settlement of the parties;

(2) Thirty percent of the disputed amount awarded by the department of labor after hearing or through appeal to circuit court;

(3) Thirty-five percent of the disputed amount awarded if an appeal is successful to the Supreme Court.

Attorneys' fees and costs may be paid in a lump sum on the present value of the settlement or adjudicated amount. (emphasis added).

[¶ 39.] Employer argues that even though attorney fees were awarded pursuant to SDCL 58–12–3, the underlying claim upon which the fees were ultimately based was a workers' compensation matter and therefore SDCL 62–7–36 applies. However, this argument ignores the fact that the phrase "fees for legal services" contained in SDCL 62–7–36 is modified by "under this Title." The fees herein were not awarded "under" that Title.

[¶ 40.] If the legislature had intended for attorneys fees awarded pursuant to SDCL 58–12–3 to be limited by SDCL 62–7–36 it certainly could have cross referenced this statute. *See* SDCL 62–5–5 (indicating that DOL can exclude a self insuring employer's certificate of exemption from the requirements of SDCL 62–5–2 and 62–5–3 if the employer fails to meet the requirements of SDCL ch 58). Yet, SDCL 62–7–36 contains no mention of SDCL ch 58.

[¶ 41.] This holding is consistent with the legislature framework in this area. This Court, when construing SDCL 58–12–3 before the statutory amendments that brought self insuring employers within its coverage, noted that the "obvious objective of SDCL 58–12–3 is to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." *All Nation Insurance Co. v.*

*Brown*, 344 N.W.2d 493, 494 (S.D.1984). *See also Ofstad v. South Dakota Dept. of Transportation*, 387 N.W.2d 539, 543 (S.D.1986)(Sabers, J., dissenting)("courts have recognized that the purpose of statutes imposing attorney fees on insurance companies who fail to pay claims is to reimburse claimants who might otherwise conclude it is not economically feasible to bring suit on a claim."). Allowing larger attorney fee awards serves the purpose of deterring vexatious refusals by employers for the compensable claims of their employees.

[¶ 42.] Likewise, this interpretation is consistent with the "long-standing public policy that workers' compensation statutes be liberally construed in favor of injured employees." *Wilcox v. City of Winner*, 446 N.W.2d 772, 775 (S.D.1989). For these reasons, we hold that attorney fee awards under SDCL 58–12–3 are not limited by SDCL 62–7–36.

## ISSUE SIX

[¶ 43.] **Whether the attorney fees awarded by the ALJ were reasonable.**

[¶ 44.] Employer also challenges the amount of attorney fees awarded by the ALJ. First, we address the proper standard of review for the agency's determination. We consistently have reviewed trial court attorney fee awards under the abuse of discretion standard and specifically have applied that standard to review the reasonableness of a circuit court's award of attorney fees pursuant to SDCL 58–12–3. *Biegler v. American Family Mutual Insurance Co.*, 2001 SD 13, ¶ 60, 621 N.W.2d 592, 607. DOL's authority to award attorney fees arises from the same statute. Accordingly, we extend that standard to the ALJ's determination in this matter. The phrase abuse of discretion refers to a discretion exercised to an

end or purpose not justified by, and clearly against, reason and evidence. *Id.*

[¶ 45.] In support of a reduction, Employer argues that attorneys would not customarily have spent the amount requested ($18,219.50) in the prosecution of the relatively small claim amount. Employer also asserts that the issues involved were not complex enough to warrant the amount time spent on this claim. We reject Employer's arguments as more than ample reasoning and evidence supports the fee award.

[¶ 46.] First, this was not a routine case. It invoked constitutional issues and questions of first impression regarding the interpretation of the statutes governing attorney fee awards. Moreover, contradicting positions were vigorously advocated by both parties. The amount of compensation generally expected by an attorney is not decisive on this issue. This Court has noted that "a reasonable fee in certain instances may be in excess of what a one-third contingency fee would produce or it may be less. It is the reasonableness of the fee, and not the arrangements the attorney and his client may have agreed upon, which is controlling." *City of Sioux Falls v. Kelley,* 513 N.W.2d 97, 112 (SD 1994). Consistent with the paramount importance of the overall reasonableness of such fees, "transcending principles" may warrant the payment of attorney fees that exceed the amount in dispute in the underlying claim. *See, e.g. Simmons v. Government Employees Insurance Co.,* 59 A.D.2d 468, 400 N.Y.S.2d 99 (2d Dept 1977) (when auto collision insurer, without reason and contrary to the thrust of no-fault insurance act, refused to promptly pay $105 claim and then contested the claim at every turn, $2149 attorney fee award was reasonable). This is such a case.

[¶ 47.] The BOP baselessly refused to compensate a state employee who had little leverage to request payment for disfigurements he suffered while serving his employer. While Lewis undoubtedly would have preferred to altogether avoid legal proceedings in favor of prompt compensation, Employer's aggressive defense of its actions necessitated the expenditure of legal resources.

[¶ 48.] Limiting the award of attorney fees in this instance by comparing it to the amount of the underlying claim to the exclusion of the other factors would partly frustrate the purpose of SDCL 58–12–3. It would encourage workers' compensation insurers to vigorously contest all smaller claims in the hopes of generally discouraging pursuit of such claims based on the threat of economic infeasibility. *See Ofstad,* 387 N.W.2d at 543 (Sabers, J., dissenting)(courts recognize that purpose of attorney fees is to make pursuit of claims against insurers economically feasible). Consequently, it would be unreasonable to limit attorney fees by exclusively comparing it to the amount of the underlying claim.

[¶ 49.] On these facts, we find the individual fee entries to be within the ALJ's discretion, and affirm the full amount of her order awarding attorney fees.

## ISSUE SEVEN

[¶ 50.] **Whether the attorney fees awarded by the circuit court were reasonable.**

[¶ 51.] A circuit court's award of attorney fees is reviewed for abuse of discretion. *Biegler v. American Family Mutual Insurance Co.,* 2001 SD 13, ¶ 60, 621 N.W.2d 592, 607. An abuse of discretion indicates discretion not justified by, and clearly against, reason and evidence. *Id.*

[¶ 52.] The circuit court also acted within its discretion to award reasonable attorney fees. Employer primarily argues that a portion of the hours awarded by the

circuit court cannot be directly attributed to prosecution of the appeal to circuit court. Indeed, it appears from attorney Dorsey's affidavit that a portion of the requested expenses represents activity aimed at completion of the attorney fees issues before the ALJ and not the circuit court. The circuit court had awarded attorney fees to Lewis up to and including December 7, 2001, but thereafter Dorsey performed work on that issue for presentation to the ALJ. Consequently, Dorsey asked the circuit court for fees representing work done after December 7, 2001, in addition to the fees representing matters filed in circuit court.

[¶ 53.] We do not find an abuse of discretion by the circuit court. SDCL 58–12–3 does not limit the circuit court's authority to award fees for work directly related to the appeal to circuit court. The award of attorney fees on these facts is reasonable. Consequently, we affirm the circuit court's award.

### APPELLATE ATTORNEY FEES

[¶ 54.] Lewis seeks fees in the amount of $1,802 for his appellate attorney fees in this matter. SDCL 58–12–3 grants us authority to award such fees. Because we have found Employer's contentions meritless, fees are warranted. We have reviewed Lewis' affidavit and find the request reasonable. Therefore, we grant Lewis $1,802 for the expense of the appeal to this Court.

[¶ 55.] Affirmed.

[¶ 56.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 57.] KERN, Circuit Judge, for ZINTER, Justice, disqualified.