2004 SD 37

**Thaddeus WELLS, Claimant and Appellee,**

v.

**HOWE HEATING & PLUMBING, INC., Employer and Appellant,**

and

**CNA Commercial Insurance, Insurer and Appellant.**

**Nos. 22950, 22951.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 2004.

Decided March 17, 2004.

A. Russell Janklow, Ronald A. Parsons, Jr. of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, South Dakota Attorneys for claimant and appellee.

Rick W. Orr, Dana Van Beek Palmer of Davenport, Evans, Hurwitz and Smith Sioux Falls, South Dakota, Attorneys for appellants.

KONENKAMP, Justice.

[¶ 1.] In this workers' compensation case, Thaddeus Wells, the claimant, an employee of Howe Heating & Plumbing, Inc., suffered electrical burns while working as an apprentice plumber. He filed for compensation. Howe and CNA Commercial Insurance, the employer and insurer, denied coverage, declaring that the claimant's failure to use a portable ground fault circuit interrupter (GFCI) amounted to willful misconduct. The matter was heard before the Department of Labor. The Department found that the claimant's failure to use a GFCI constituted willful misconduct and that such failure was a proximate cause of his injury. On appeal, the circuit court reversed, holding that the employer and insurer failed to meet their burden of proving proximate cause. On appeal before this Court, we affirm because we are firmly and definitively convinced that the Department erred in finding that failure to use a GFCI proximately caused the injury.

## Background

[¶ 2.] Wells worked for Howe from 1994 until 2002. For most of that time, he was a shop foreman responsible for issuing tools. Eventually, he became an apprentice plumber. On July 7, 2000, he was sent to a rental property in Sioux Falls to install some plumbing fixtures. To perform his work, Wells entered a crawl space under the building. He took with him a "trouble light" and a "sawzall." Both required a source of electricity to function. Before entering the crawl space, he plugged the light into an electrical outlet in the kitchen and the saw into an outlet in the living room.

[¶ 3.] Once he entered the crawl space, Wells reached over and grasped the light in order to position it. He felt and saw an electrical spark. Concerned for his safety, he began to exit the crawl space. With one hand, he grabbed the light; with the other, he grabbed the saw. Electricity surged through his body. He attempted to drop the saw, but he could not release his grip. He tried to call for help, but was unable to speak. After approximately thirty seconds of electrocution, he spotted the extension cord connected to the saw. He kicked at the cord. While the kick did not unplug the cord, his action stopped the current. After collecting himself, Wells returned to the shop and reported the incident. He had suffered an electrical burn to his arm. It required skin graft surgery.

[¶ 4.] After initially preauthorizing his surgery, CNA informed Wells that he was not entitled to any coverage for his injury because he had failed to use a safety device—a GFCI. This device plugs directly into an outlet, and, in turn, an extension cord, and an electrically operated tool can be connected to it. A GFCI detects irregularities (ground fault) in the flow of electrical current. When this happens, the GFCI will break the circuit, immediately stopping the flow of electricity to reduce the hazard of electric shock. Howe claimed that (a) its employees were required to use GFCIs when using any electrical equipment, (b) Wells could have obtained a GFCI upon request, and (c) if he had used the device, the accident would not have occurred.

[¶ 5.] Wells filed a petition for workers' compensation benefits with the Department of Labor. Howe and CNA answered, affirmatively alleging that the claim was barred by SDCL 62–4–37. During the subsequent hearing, Howe argued that its safety policies required that all its employees use GFCIs when working with any electrical equipment. In support of its position, Howe offered copies of various safety checklists, which Howe interpreted as mandating the use of GFCIs. Howe also showed that Wells was aware of this policy and that GFCIs were available for use by its employees. Finally, Howe presented evidence that it enforced its safety policies.

[¶ 6.] As for the cause of the accident, Greg Lorenzen, Howe's service manager, testified that had Wells used a GFCI, the accident would not have occurred. Lorenzen explained that his inspection of the accident site did not reveal any other sources of electricity. He also testified that, using a GFCI, he finished the work that Wells had begun and was neither injured nor electrocuted. While Wells offered no other possible cause for the accident, he disputed Lorenzen's qualifications to offer an opinion that failure to use a GFCI was a proximate cause of the accident.

[¶ 7.] Following the hearing, the ALJ concluded that SDCL 62–4–37 barred his petition because Wells "intentionally disregarded [Howe's] safety rule" and Howe "established by a preponderance of the evidence that claimant's intentional and willful failure to use a safety appliance provided by [Howe] was the proximate cause of [the] injury."

[¶ 8.] The circuit court reversed, concluding that Howe failed to demonstrate that failure to use a safety appliance proximately caused the injuries. The employer and insurer now appeal, raising the following issue: "Whether the circuit court erred in reversing the Department of Labor's decision that claimant was barred from receiving worker's compensation benefits pursuant to SDCL 62–4–37, for engaging

in willful misconduct by failing to use a safety appliance?"[1]

### Analysis and Decision

[¶ 9.] Under SDCL 1–26–36, we must "give great weight to the findings made and inferences drawn by an agency on questions of fact." However, when an agency's decision is "[c]learly erroneous in light of the entire evidence in the record" a reviewing court should reverse. *Id.* "*Even when substantial evidence supports a finding,*[2] reviewing courts must consider the evidence as a whole and set it aside if they are definitely and firmly convinced a mistake has been made.*" Sopko v. C & R Transfer Co., Inc.,* 1998 SD 8, ¶ 7, 575 N.W.2d 225, 229 (emphasis added). Questions of law, like statutory interpretation, are reviewed de novo. *Clausen v. Northern Plains Recycling,* 2003 SD 63, ¶ 7, 663 N.W.2d 685, 687; *Johnson v. Albertson's,* 2000 SD 47, ¶ 19, 610 N.W.2d 449, 453.

[¶ 10.] The employer and insurer claim that Wells engaged in willful misconduct, and thus, he is precluded from recovery under SDCL 62–4–37. That statute provides:

> No compensation shall be allowed for any injury or death *due to* the employee's willful misconduct, including intentional self-inflicted injury, intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. *The burden of proof under this section shall be on the defendant employer.*

SDCL 62–4–37 (emphasis added). Under this statute, the employer has the burden of proving not only that the employee committed "willful misconduct," but also that the alleged injury was "due to" such willful misconduct. *Goebel v. Warner Transp.,* 2000 SD 79, ¶ 13, 612 N.W.2d 18, 22. A party must lose when it bears the burden of proof but fails to offer probative evidence. *Cavender v. Bodily, Inc.,* 1996 SD 74, ¶ 19, 550 N.W.2d 85, 89. In interpreting the phrase "due to," this Court has said that it refers to proximate cause. *Id.* Therefore, in order to prevail, an employer must first show that the employee's "willful misconduct" was a proximate cause of the injury. *Id.* A proximate cause is a cause that produces a result in a natural and probable sequence and without which the result would not have occurred. *Estate of Gaspar v. Vogt, Brown & Merry,* 2003 SD 126, ¶ 6, 670 N.W.2d 918, 921 (citations omitted). This cause need not be the only cause of a result. *Id.* It may act in combination with other causes to produce a result. *Id.*

[¶ 11.] The employer and insurer argue that the "mechanics of the accident support the conclusion that [the claimant's] injury was the proximate result of his failing to use a [GFCI]." In maintaining this proposition, they reason that

> [i]t is beyond dispute that the very purpose for using a [GFCI] is to protect from electrocution.... [T]he electric shock occurred after [the claimant] grabbed the sawzall.... Thus, the evidence presented to the Department

---

1. Because of the circuit court's holding on the issue of proximate cause, it did not reach the issue whether the accident involved "willful misconduct" under SDCL 62–4–27. Because we affirm, neither do we address that issue.

2. We emphasize this language because both sides rely on a standard of review no longer in use. In *Sopko*, we made clear that the "substantial evidence test" was not in accord with the "clearly erroneous" standard. 1998 SD 8, ¶ 7, 575 N.W.2d at 229. Insofar as *Lewis v. State Dep't of Transp.,* 2003 SD 82, 667 N.W.2d 283, and *Reetz v. Lutheran Health Systems,* 2000 SD 74, 611 N.W.2d 230, state otherwise, they are overruled.

showed that the *only logical explanation* is that the living room outlet was the source of the electric shock. (Emphasis added.)

The employer and insurer conclude, "[t]here can be no question that [the claimant's] failure to use a GFCI, which indisputably protects against the very injury [the claimant] suffered, was a substantial factor in causing his injury."

[¶ 12.] Crucial to the employer and insurer's theory that failure to use a GFCI was a proximate cause of the claimant's injury is whether the device would have prevented the underlying electrical irregularity from harming the claimant. It is undisputed that a GFCI is a device that under certain circumstances prevents an electrical current from injuring a person. But a GFCI will not protect a person from every possibility of electrocution. Thus, in order to prove that the claimant's failure to use a GFCI was a proximate cause of his injury, it was necessary for the employer and insurer to prove, by a preponderance of the evidence, that under the circumstances a GFCI would have prevented the electrical shock. This they failed to do.

[¶ 13.] The employer and insurer's sole support for their assertion that the use of a GFCI would have prevented the claimant's injury is the testimony of Lorenzen, Howe's service manager. Larry Howe testified that he did not know what underlying event caused the electrocution. Ronald Howe also testified that he did not know what initially happened to cause the electrocution. Nor did Kathleen Haan–Strong, Howe's safety chairperson, explain the cause of the electrocution. Despite the claimant's request that Howe hire an electrician to determine the cause of the electrical malfunction, the only "investigation" into the underlying cause of the accident was conducted by Lorenzen.

[¶ 14.] From his investigation, Lorenzen testified that the kitchen outlet and the distribution box were not protected by an internal GFCI. He did not find any other sources of electrical current in the crawl space, and he testified that he was able to complete the job, using a portable GFCI, without being electrocuted. Based on these observations, Lorenzen concluded that the claimant "crossed two power tools together and had himself grounded, I would imagine, on a piece of copper down there or whatever, but that's how it would have happened."

[¶ 15.] The employer and insurer reason that because Lorenzen was knowledgeable in the functioning of a GFCI, he was qualified to offer an expert opinion on the cause of the electric shock. Yet, a person who might understand how a piece of electrical equipment functions is not necessarily qualified to opine on the cause of an electrocution. For the Department to accept Lorenzen's "expert" opinion on causation, the employer and insurer must have provided some "scientific, technical or other specialized knowledge" to support it. SDCL 19–15–2 (Rule 702). Under this rule, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This rule has two major requirements. Obviously, the first is that a witness offered to testify on specialized knowledge must be an expert. Although Lorenzen certainly had expertise in using electrical equipment, including GFCIs, the record is devoid of any showing that he was an expert in identifying the causes of an electrical shock. Indeed, we still do not know which electrical outlet malfunctioned or whether either of them malfunctioned.

Thus, we cannot know if a GFCI would have been effective.

[¶ 16.] The second requirement of SDCL 19–15–2 (Rule 702) is that expert testimony must be reliable to be admissible. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court concluded that the admissibility of expert testimony is dependant upon a showing of relevance and reliability. Judges have "considerable leeway" in deciding in each case "how to go about determining whether particular expert testimony is reliable." *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167. Although the standard for reliability is not high, the goal is to ensure that expert testimony is based on sound methods and valid procedures. *Id.* at 147, 119 S.Ct. 1167; Weinstein's Evidence § 702.05[3]. To abide by *Daubert–Kumho,* the proponent offering expert testimony must show that the expert's theory or method qualifies as scientific, technical, or specialized knowledge. *State v. Guthrie,* 2001 SD 61, ¶ 34, 627 N.W.2d 401, 415–16 (citing SDCL 19–15–2 (Rule 702)). One method of meeting this burden is by establishing that there has been adequate empirical proof of the validity of the theory or method. Edward J. Imwinkelried, Evidentiary Foundations 287 (4th ed 1998). As the Supreme Court stated, "[t]he focus ... must be solely on principles and methodology, not on the conclusions they generate." *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786.

[¶ 17.] Lorenzen's opinion was unreliable because it could not be substantiated by showing what the electrical fault was that caused the claimant's electrical shock. Without knowing this, we cannot know if a GFCI would have prevented the claimant's injury. Lorenzen's proof was purely anecdotal: he performed the same job using the portable GFCI and did not experience a shock. His opinion on causation was not admissible as expert testimony. SDCL 19–15–2.

[¶ 18.] Alternatively, the employer and insurer argue that Lorenzen's opinion was at least admissible under SDCL 19–15–1, which allows laypersons to give opinion testimony.[3] However, this Court has repeatedly affirmed that "[e]xpert testimony is required when the subject matter at issue does not fall within the common experience and capability of a lay person to judge." *Goebel,* 2000 SD 79, ¶ 32, 612 N.W.2d at 26 (citations omitted). Here, where no source of the electrical current that injured Wells was apparent or identified, expert testimony was necessary.

[¶ 19.] Lastly, the employer and insurer argue that "[c]ommon sense and logic clearly support the Department's factual finding that the use of a GFCI would have prevented [the claimant's] injury." Without expert opinion, however, we are not satisfied that no other logical explanation exists on why the electrocution began when Wells grabbed the saw and ended when he kicked at the extension cord. First, neither of these events explains what caused the light to "spark" and then "shock" Wells before he grabbed the saw. Second, Wells testified that the kick did not unplug the extension cord from the wall. Perhaps even more detrimental to

---

**3.** SDCL 19–15–1 provides:
  If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
  (1) rationally based on the perception of the witness and
  (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

their argument, the employer and insurer claim that "Lorenzen completed this particular job himself using the same type of equipment under the same general conditions without being shocked." "The only difference between [the claimant's] activities and ... Lorenzen's activities" they claim, "was ... Lorenzen's use of a [GFCI] to complete the job." This assertion leads us to ask, how did Lorenzen complete the job under the same conditions? As explained by Lorenzen, when an irregularity in the flow of electricity is detected by the GFCI, it interrupts the flow of current. Seemingly then, it would be impossible to complete the job using a GFCI. Under identical conditions, the GFCI would have simply shut down the flow of electricity each time Lorenzen grasped the saw. Lorenzen did not testify that this occurred.

[¶ 20.] These unexplained questions leave us with the definite and firm conviction that the Department was clearly erroneous in concluding that the evidence established that failure to use the GFCI was a proximate cause of the claimant's electric shock. Without knowing what caused the errant flow of electricity, it is impossible to conclude with any reasonable certainty that a GFCI would have prevented the injury.

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.